No. 9112
Orleans Appeal

EMMA LATMORE, Appellant, v. NEW ORLEANS PUBLIC SERVICE INC.

(June 8, 1925, Opinion and Decree.)

(*Syllabus by the Court.*)

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 30, 34.**
A street railway company is liable for injuries sustained by a passenger in the act of boarding one of its street cars when the evidence shows the injuries to have been caused by a fall due to the premature starting of the car.
(Civil Code, Art. 2315. Editor's note.)

Appeal from the Civil District Court, Parish of Orleans, No. 155, 534. Division "D", Hon. Porter Parker, Judge.

This is a suit for damages for personal injuries due to motorman negligently prematurely starting a street car.

Judgment for defendant, plaintiff appealed.

Judgment reversed.

Woodville & Woodville, attorneys for plaintiff and appellant.

Dart, Kernan & Dart, attorneys for defendant and appellee.

WESTERFIELD, J.  Plaintiff sues the defendant street railway for $4,150.00 alleged to be due her for damages on account of physical injuries and loss of earnings, earning capacity, which she claims to be due to a fall caused by the sudden starting of a street car owned and operated by defendant, as she was in the act of boarding it.  She itemizes her claim as follows:

| | |
|---|---|
| For nervous and mental shock— | $500.00 |
| Physical pain and suffering | 1,500.00 |
| Loss of earnings | 150.00 |
| Impairment of earnings capacity | 2,000.00 |
| | $4,150.00 |

Defendant denies that the accident was caused in the manner alleged by plaintiff and avers that plaintiff fell in an effort to alight from the car just after she had boarded it and while the car was in motion, and that consequently, her injuries were due entirely to her own fault and carelessness.

There was judgment for defendant and plaintiff has appealed.

The accident happened on the Napoleon Avenue line in Washington Avenue at the point where the street railway tracks traverse the tracks of the Y. and M. V. R. R. At this point conductors in charge of defendant's street cars are required to cause the cars to be stopped before crossing the railroad tracks and to get out and walk ahead and across the railroad tracks for the purpose of "throwing a switch" or derailer referred to in this record as a "Lizzie" and to signal to the motorman to proceed, the conductor boarding the car as it passes him, procedure wisely adopted to avoid crossing accidents.

According to plaintiff, she and her two sisters were standing near the crossing waiting for the street car. When the car stopped the conductor alighted and walked ahead to the "Lizzie" as usual, whereupon, the three sisters started to board the car. Two of them were safely on the platform and plaintiff in the act of getting on with one foot on the step, when the car started, throwing her to the ground and injuring her. She is supported by one of her sisters (the other being sick at the time of trial), her husband, who claims to have seen the accident from the front gate of his sister-in-law's home, which was nearby, and by two other witnesses, who appear to be disinterested. All of plaintiff's witnesses tell substantially the same story and it would serve no useful purpose to review their testimony separately.

Defendant produced four witnesses who were present when the accident occurred, the mortorman, conductor and two passengers. The conductor testified that he looked over the side of his platform toward the rear and saw all three women get safely on before starting his car and shortly thereafter hearing the conductor holler to him, he stopped his car and saw plaintiff lying near the derailer (a distance of 40 or 50 feet from the point she boarded the car); that he helped carry plaintiff into a house and heard her say that she jumped off the car because she didn't have any money to pay her fare because she had given all her money to her husband.

The conductor testified that as he was throwing the derailer he saw three colored women running to catch the car and signaled to the motorman to stop; that the three women got on the car and as the car neared the track (Y. & M. V. RR.), he saw plaintiff lying on Washington Avenue; that he saw plaintiff go out of the car as though she jumped. He says he helped carry her to the house but does not testify to any statement by plaintiff as to why she jumped off.

One of the passengers, the witness Thibeudaux says plaintiff jumped off the car while in motion going at a "pretty fair speed" and that after she fell, he heard her say in the presence of the conductor and others that her husband didn't give her any money. This witness rather destroys the effect of his evidence by repeating a number of times the statement that the conductor was on the back platform with him all the time and didn't get out of the car at all and by his statement that the car was going at a "pretty fair speed" when plaintiff jumped off, when, as a matter of fact, the car under any conditions had just started. The other passenger, Govar, testified that he saw both the conductor, who was on the side of the

track near the front end of the car, and the plaintiff who was boarding it in the rear at the same time. His testimony either because of confusion, embarrassment or for some reason is most unsatisfactory.

An employee of defendant, Edward Roullier, testified that he called on both sisters of plaintiff and obtained a verbal statement to the effect that plaintiff jumped off the car while in motion and was heard to say "bring me my check or something to that effect".

Our conclusions are that plaintiff should recover. We cannot accept the defendant's theory of the accident presenting, as it does, such improbability and resting upon such unsatisfactory evidence. It would be extraordinary for plaintiff to board the car and immediately leave it and particularly so for her, a middle aged negress, to jump off while the car was in motion. The explanation that she desired to get a check from her husband and that she had no car fare is not convincing. The fact that she was found after her fall some 40 or 50 feet from the point where she boarded the car which is stressed by counsel, does not establish that she jumped and did not fall in the act of alighting since she may have held on for a while with her hands struggling before falling.

The proof on the question of quantum is very meagre. Plaintiff claims to have been confined to her bed for three months with aches and pains, but she admits having had two surgical operations. No doctor has testified concerning her injuries. No bones were broken and no permanent injury has resulted. Under these circumstances, we will allow $350.00.

For the reasons asigned, it is ordered that the judgment appealed from be annulled and reversed and it is now ordered that there be judgment in favor of plaintiff, Emma Latmore, wife of Henry Latmore, and against the defendant, the New Orleans Public Service, Inc., in the sum of $350.00 with legal interest thereon from judicial demand, and all costs.

Judgment reversed.