BAADER v. DRIVERLESS CARS, INC.

(February 11, 1929. Opinion and Decree.)
(March 4, 1929. Rehearing Refused.)
(April 22, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Monroe and Lemann and Nicholas Callan, of New Orleans, attorneys for plaintiff, appellant.

Alexis Brian, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. As its name signifies, the defendant corporation, is engaged in the business of renting automobiles without drivers. On November 1, 1925, it rented one of its cars to an individual by the name of William Jones, who· ran into and injured the plaintiff, a lady of sixty-five years of age, under circumstances which clearly involved him with responsibility for the accident, and resulting damages.

Jones, however, is not before the Court, this suit being directed against defendant corporation alone. The liability of defendant is predicated upon its alleged negligence in renting an automobile to an incompetent driver, incompetent by reason of his condition at the time, and, because he had not been licensed to drive an automobile in the City of New Orleans, as required by Ordinance C. C. S.

We have said that Jones was responsible for the accident which resulted in plaintiff's injuries. The fact is so manifest that we will not indulge in an analysis of the testimony to that effect. Suffice it to say, that he drove the automobile along Canal Street, the busiest thoroughfare in the city, on a holiday, with reckless speed and abandon and indifference to the safety of other automobiles and of pedestrians. He collided with plaintiff at the corner of Canal and Carondelet Streets with great force, and continued on his heedless way until brought to a stop by the police. When arrested he was discovered to be in a maudlin state of intoxication, a condition very inadequately expressed by his modest admission, between sobs, that he had "a few beers." This statement, in view of the benign reputation which this beverage enjoys, amounts to slander.

We have emphasized the condition of Jones, at the time of the accident because it had an important bearing upon the issue in this case, the liability of defendant for the result of his (Jones) misconduct, In other words, if Jones was drunk when he rented the automobile from defendant, or if his condition was such as to indicate that he was in fair way of getting drunk, he could hardly be considered competent to drive an automobile. The accident happened in the afternoon, the time being given by the witnesses, as 1:45 P. M., 2:00 P. M., and 2:15 P. M. Accepting the last mentioned time as correct, and comparing it with 2:00 P. M., the time that the car left defendant's garage, as shown by the record, we find that just fifteen minutes had elapsed. Defendant placed on the stand several of its employees, who testified that Jones was perfectly sober when he entered defendant's garage and rented the car; that the automobile was returned to the garage at 2:40 P. M., having been driven back by one of defendant's employees, who was sent to the scene of the accident about seven squares away, and that the speedometer indicated that it had travelled twelve miles while in the possession of Jones.

The fact that the automobile had been out of the garage for forty minutes being explained by the delay incident to its return in the confusion which ensued after the accident, but the distance it is said to have been traveled cannot be explained upon any theory consistent with the facts as developed by either side. To suppose that within forty minutes a perfectly sober man could rent an automobile at two o'clock, drive it twelve miles, imbibe sufficiently to reach one of the final states of intoxication, injure a pedestrian, become involved with the police, abandon the automobile seven blocks away from the garage, while he was being taken to jail, and there be sufficient time left for the car to be

sent for and driven back to the garage, is to stretch the imagination to the breaking point.

The inevitable conclusion is that the speedometer was wrong, and that Jones was either drunk at 2:00 P. M., when he hired the car, or so near it as to give palpable evidence that he was in an advanced state of progressive intoxication. Fifteen minutes, the time between the hiring of the car and the accident, is entirely too brief for a sober man to drive seven blocks, much less twelve miles, and drink as much liquor as Jones must have drank to get in the state he was at the time of the accident.

Counsel in their brief profess their inability to discover any Louisiana case directly in point and we are not aware of any. The cases of Lanauze vs. Baldwin & Company, 2 La. App. 349, and Vance vs. Poree, 5 La. App. 109, may be said to inferentially touch upon the question involved. Act 78 of 1924 makes it unlawful to operate a motor vehicle while in an intoxicated condition. See the Encyclopedia of Automobile Law, Volume 2, page 1375. See also Berry on Automobiles, Art. 1144; Mitchell et al. vs. Churches, 119 Wash. 547, 206 Pac. 6, 36 A. L .R. 1132.

In the Churches case it was held that if Churches loaned his automobile "with the intention, or understanding, that Colbard was to drive it, and with the knowledge that Colbard was likely to become under the influence of intoxicating liquors, and if, with that knowledge, he intrusted the automobile to Colbard under such circumstances as would produce in the mind of a reasonable man reasonable grounds for belief that the driver of an automobile might become intoxicated then, and in that event, if Colbard is liable, Churches would

be liable. See also Barker vs. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87.

We have no hesitancy in concluding, without the aid of any direct authority of this jurisdiction before us, that the owner of an automobile who rents it to a drunken driver or to a driver approaching that condition is negligent and responsible in damages for injuries sustained by a pedestrian due to the negligence of the driver, upon the principle that one who entrusts to incompetent hands a dangerous agency, is responsible for the mischief due to the incompetent operation of the machine. To do otherwise would be to encourage those engaged in a business like defendant, to launch upon the city streets numbers of death dealing instrumentalities, which no amount of caution would circumvent, and add to the ever increasing peril which confronts the pedestrian.

Ordinance 8639 C. C. S. provides that:

"It shall be unlawful for any person to loan or permit the use of a motor vehicle to a non-licensed operator or driver or to a driver whose license has been suspended or revoked."

Defendant made no inquiry of Jones concerning the possession of a license as required by the ordinance and it is established that he had none.

It may be, as defendant contends, that the absence of a license, had nothing to do with the accident, and since a drunken driver would be just as drunk with a license, perhaps that is true, but on the other hand the failure to inquire whether a prospective customer had complied with a city ordinance, designed for the protection of the public, and to secure its safety upon the public streets is persuasive of carelessness or at least indifference to salutory municipal regulations in the pub-

lic interest and affecting the very business carried on by defendant.

Defendant pleads contributory negligence. Plaintiff is alleged to have been negligent in that she walked across the street against the signal controlling traffic at that intersection. But the clear weight of the evidence is to the contrary. Even if she did, the driver of the automobile, Jones, had ample opportunity to see her in time to avoid running her down and could easily have avoided the accident, as there was but few, if any, automobiles moving in his direction at the time.

Dill vs. Colley, 3 La. App. 305.

Gouzien vs. Feraci, 2 La. App. 115.

Encyclopedia of Automobile Law, page 1262.

Mrs. O'Neill estimates her financial loss and expenses resulting from the accident, including hospital charges, drugs, medical service, destruction of eye glasses and wearing apparel, etc., at . $434.50. She remained in the hospital 13 days. Her arm was lacerated, requiring some forty stitches, she was cut on the forehead and bruised about the side. However, she suffered no permanent injury. We believe an allowance for all items of damage claimed of $1250.00, to be proper under the circumstances.

For the reasons assigned the judgment appealed from is reversed and it is now ordered that there be judgment in favor of Mrs. Louise Baader O'Neill, and against the defendant Driverless Cars, Inc., in the full sum of $1,250.00, with legal interest thereon from judicial demand, and all costs.