### DAVIS v. SHAW.
### No. 4326.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

302

Drew & Richardson, of Minden, for appellant.

Kennon & Kitchens, of Minden, for appellee.

## CULPEPPER, J.

Plaintiff's suit was dismissed by the lower court upon an exception of no cause of action, and he has appealed.

The petition sets forth substantially the following:

Plaintiff, while driving his Ford car in a lawful manner along the Shreveport-Minden public highway at a point within the corporate limits of the city of Minden, in the parish of Webster, on the afternoon of September 13, 1931, was run into by a Studebaker coupé belonging to defendant, and which was being driven at the time by defendant's sixteen year old nephew, Oscar L. McLain. Defendant was not in said coupé at the time; its only occupants being McLain and two

other young men, who were out pleasure riding.

McLain's father and mother died when he was four or five years of age, since which time he had been living in the home of defendant, being cared for, educated, and controlled and supervised by her, as one of her family, "living under the same roof with defendant," although defendant had never qualified as his tutrix. It is alleged that "defendant was and is the minor's guardian," but plaintiff's counsel states in brief filed that the allusion in the petition to guardianship was not meant to convey the meaning that defendant was the legally qualified guardian, as such was not her status toward the minor. We shall therefore not consider defendant's relationship toward the minor as that of legal tutrix. The term "guardian" is unknown to the laws of this state.

It is alleged that defendant is the head of her family of which said minor was and is a member, although it is not alleged that she is a widow or that her husband does not reside with her. It is alleged that defendant is the owner of the Studebaker coupé, and that she purchased it for the pleasure, enjoyment, and use of the members of her family, and that it was being so used by her said minor nephew at the time of the collision. It is alleged that, as a result of the collision, four of plaintiff's children in his Ford car with him at the time were badly injured, and his car also damaged, for which an aggregate sum of $1,494 is sought to be recovered from defendant.

It is alleged that said Oscar L. McLain was driving defendant's car at a reckless and dangerous speed of approximately sixty miles per hour at the time of the collision; that he was operating and using said car "with the permission, express and implied, of defendant, and with her knowledge, approval and consent"; that he "was and is a careless, reckless and incompetent driver of an automobile, all of which defendant had knowledge and well knew; that, notwithstanding such knowledge, defendant continued to permit her minor nephew to use the car at will, and whenever he desired to do so, all of which constituted gross negligence on the part of defendant, which gross negligence was the proximate cause of the injuries complained of in this suit."

It is further alleged that the speed limit in the city of Minden is twenty-two miles per hour, and that it is unlawful for a person under seventeen years of age to drive a car within the city's limits, under special ordinances of said city; that under these circumstances it was also gross negligence on the part of defendant to permit her nephew to drive her automobile in the manner he did within said city limits.

The petition sets forth that defendant resides in Cotton Valley, which is some distance from Minden.

It is not alleged that defendant was present with her nephew in her car at the time or that she had requested or ordered him to go from her home in Cotton Valley to Minden, or go elsewhere, upon any business or errand for her, or that she knew he was going to drive to Minden, but that she merely had permitted him to use her car in which to go out riding with his friends, not members of her family.

Counsel for plaintiff in brief filed relies upon the following articles of the Civil Code:

2315: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

2316: "Every person is responsible for the damages he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

The modifications or restrictions referred to in the last named article are given in articles 2318 to 2322, inclusive. They specifically provide that parents are responsible for the damages occasioned by their minor children, tutors for that of their wards, curators for insane persons, masters for their servants and employees, teachers for their scholars, artisans for their apprentices, and owners for their animals and their buildings.

We find innumerable cases cited under the various codal articles recognizing liability, but in every case the provision of the article under which each case is cited is found to apply. From this it would seem that liability cannot be recognized, unless specially provided for under some one of the codal provisions.

Under article 2320, dealing with masters, teachers, and artisans, is cited the case of Marionneaux v. Brugier, 1 McGloin, 257, the syllabus of which reads: "Restriction" of this article, "limiting liability for damages occasioned by the acts of minors to cases where the person to be charged 'might have prevented the act which caused the damage and have not done it,' applies only to masters or employers, teachers or artisans." Dart's 1932 Annotated Code.

In Moulin v. Monteleone, 165 La. 178, 115 So. 447, 451, the Supreme Court of this state, in construing article 2315 of the Code, said: "It is well settled, however, that that broad language, which first appeared as article 16 of title 4, Book 3, of the Act of March 31, 1808, called the 'Digest of the Civil Laws in

304

Force in the Territory,' and sometimes called the Civil Code of 1808, was only declaratory of a very general and fundamental principle of justice, and was not intended to give a cause or right of action for every grievance, or where none was allowed otherwise under the laws in force in the territory."

The court in that case, further discussing the article 2315, cited the case of Hubgh v. New Orleans & Carrollton Railroad Co., 6 La. Ann. 495, wherein the court held that plaintiff had no right or cause of action because, although the case was within the very letter of the law, it was not within its meaning or its spirit.

In the Hubgh Case, Chief Justice Eustis, as the organ of the court, in sustaining an exception of no cause or right of action in the case, said: "The obligation resulting from a tort can only be the ground of an action, when the obligation is recognized and ratified by the law: for by far the greater portion of the wrongs to which we are exposed in our artificial condition of society the law does not afford any redress. The redress is of necessity confined to legal rights, for which the law has provided an action or inflicts a punishment. 3 Black. Com. 23, 117. Pothier on Obligations, No. 1 and 197."

In both the Hubgh and Moulin Cases, supra, the court gives a most exhaustive history of the article of the Code in question, and the interpretation which has always been given to it, the effect of which, as we understand, being that in no case does it apply except under express statutes wherein it is specifically made to do so.

Plaintiff attempts to bring the case within what is known in the common-law states as the "Family Purpose Doctrine." We have found but one allusion to this doctrine in our jurisprudence—that of the case of Globe Indemnity Co. v. Quesenberry and Wife, 1 La. App. 364. The court refused to recognize such as being the law of this state, and in passing on the case said: "In this state, liability for damages must be clearly expressed or implied from the terms of the statute, Art. 2315 of the Code, and as we find no such provision either in that article or those following, establishing such liability on the part of the husband, we do not believe that plaintiff has any cause of action against the defendant husband."

Article 2318 has been held to be in derogation of common right, and should be strictly construed. Maloney v. Goelz, 12 La. App. 31, 124 So. 606.

Plaintiff's counsel cite and rely on the case of Baader v. Driverless Cars Co., Inc., 10 La. App. 310, 120 So. 515, 517. In that case the defendant corporation was engaged in the business of renting out its automobiles for profit to the general public. It rented a car to one Jones, who was in a state of intoxication, or nearly so, to drive upon the streets of the thickly populated city of New Orleans on a holiday, especially Canal street along which he was driving at the time of the accident complained of. When Jones ran into plaintiff, he kept going at a fast and reckless speed until stopped by the police, who found him to be "maudlin drunk." The court in holding the defendant liable used the following language: "We have no hesitancy in concluding, without the aid of any direct authority of this jurisdiction before us, that the owner of an automobile who rents it to a drunken driver or to a driver approaching that condition is negligent and responsible in damages for injuries sustained by a pedestrian due to the negligence of the driver, upon the principle that one who intrusts to incompetent hands a dangerous agency is responsible for the mischief due to the incompetent operation of the machine. To do otherwise would be to encourage those engaged in a business like defendant's to launch upon the city streets numbers of death-dealing instrumentalities which no amount of caution would circumvent."

The court in that case states that it was "without the aid of any direct authority of this jurisdiction before" the court in so holding. We have been unable to find other authority among the many negligence cases in this state, and have been cited to none.

There is a difference between that case and the present one. The defendant corporation in that case was engaged in the business of renting its automobiles for profit to the general public to operate upon the busy streets of a thickly populated city, where no doubt it was its duty to be more strict in the use or permitted use of its automobiles than was defendant's duty in intrusting her car to some one in her home town of Cotton Valley to drive upon the public highways in the country. The chances could not be said to be nearly so great for the happening of an accident. Furthermore, in the cited case it was a drunken man to whom defendant intrusted its automobile, which fact made it almost inevitable that he would collide with and injure some one, whereas in the present case it is not alleged that defendant's nephew was in an intoxicated condition nor that he was incompetent by reason of immature age or inexperience.

That case is applicable only to owners of automobiles for public hire and the liability of owners thereof who knowingly rent such automobiles to persons who are incompetent to operate them on account of being intoxicated, and not to a case like the present one.

Since the "Family Purpose Doctrine" does not apply in this state, and since defendant was neither the parent, tutor, master, or principal with reference to the driver of the automobile, causing the alleged accident, the relationship of parent and minor child, tutor

and ward, master and servant, or principal and agent, did not exist between this defendant and her minor nephew, McLain, and there could be no legal liability on the part of defendant for the negligent acts of McLain, the driver of the automobile in question, on these grounds.

So there is no cause of action alleged, unless the theory of plaintiff under the allegations of the petition that defendant was negligent in permitting McLain, for his own pleasure and recreational purposes, to drive her automobile, and her knowledge that her nephew on a previous occasion while driving this car had met with an accident, and had previously driven the car at excessive speed, suffices, and, of course, unless her said acts constituted gross negligence and was the proximate cause of the alleged collision.

So far as we have been able to find, this question is here submitted to an appellate court in Louisiana for the first time. It is therefore necessary for this court to establish the rule applicable in such cases.

The only question at issue then is, Was the act of defendant in lending her automobile to McLain such a negligent act under the circumstances alleged in plaintiff's petition as would justify recovery under the law of Louisiana as to owners of automobiles permitting others to operate their cars?

We know of none, and plaintiff has cited no law, that was violated by defendant in lending her car to her nephew, McLain. An owner of an automobile, as of other property, certainly has the legal right to lend the property to whom he pleases, so long as such property is not a dangerous instrumentality and has no inherent vice or defect therein which could be reasonably considered dangerous within itself. Defendant's automobile was not alleged to have been defective in any manner, and we must therefore assume it was in good running condition. That a motorcar without defect is not per se a dangerous instrumentality or agency has been affirmed by the great weight of authority in this and other states.

In Corpus Juris, under Motor Vehicles, § 16, p. 614, it is said: "A motor vehicle is not in itself a dangerous machine or instrumentality; it cannot be placed in the same category as ferocious animals, locomotives, gun powder, dynamite, and similar dangerous machines and agencies. The rules of law applicable to such dangerous instrumentalities generally do not apply."

Of course, where an owner of an automobile permits it to become in a defective condition so it cannot be controlled when in operation, or where they are permitted to be operated by very young, or inexperienced, persons, by insane persons, inexperienced drivers, or by doped or drunken persons, or by other persons similarly incompetent, such automobile may become a dangerous instrumentality or agency, and the law applicable to such dangerous machines may apply. And, where an owner of a motorcar, knowing of such condition existing either in the car itself or the driver to whom he intrusts the use of such car, may be so negligent in permitting his automobile to be operated on the public highways in such condition, or by such person, as to be held responsible in damages for the negligent operation of such automobile.

However, due to the fact that automobiles have become so numerous and are admittedly so essential to society in general and to business as they presently exist, as well as to the health, happiness, and general welfare of the inhabitants of this and other states of this country, we think it would be a dangerous doctrine which would compel every owner of an automobile to be an insurer and guarantor to the public against all accidents caused by his or her automobile while the same was being operated by a third person when not for the benefit, pleasure, or business of the owner himself. To hold that a person who owns an automobile would be liable to a third person for any damages the owner's car might be the occasion of, where an owner gratuitously permits another to use his car for his own purposes, merely on the ground that the owner had knowledge that such user had previously had an accident while driving an automobile or had on some previous occasion, been vaguely and generally accused of speeding and recklessness, would unjustly deprive both the owner and the nonowner user of such car, of pleasure, recreation, and the benefits to which every citizen of this country is accustomed, if not in a sense entitled to. If the mere allegation that an owner of an automobile had loaned it to such third person for use or pleasure, with the knowledge that such person had previously been characterized as a careless driver, would be equivalent, in a practical manner, of making such owner an insurer against the negligent acts of such nonowner driver, and would result in depriving many young people, as well as many adult members of society, of many pleasures, recreations, and benefits where such persons have not the means with which to obtain an automobile for themselves.

It is a well-known fact that but few automobile drivers can be proven to have neither had an accident or exceeded what many individuals declare to be the limited speed to which an automobile should be driven on the public highways. It must be taken into consideration that automobiles, as presently constructed and designed, are as safe at moderately high speed on open roads as were other vehicles which were so used many years ago. In fact, all such machines are now made, constructed, and designed to run most economically and safely at high speeds, and most of them are so operated at the present time.

Some few years ago such speeds would have been considered dangerous and excessive, but, in recognition of the improvement and progress that has been made in automobile manufacture for the past few years, most states have abandoned the prohibition of any given speed as dangerous or unlawful, and have provided in lieu thereof that they should be operated at such speed and in such manner as is safe under the circumstances and place of operation.

█ We therefore do not believe this plaintiff's allegations that defendant had knowledge that McLain had previously operated her automobile at an excessive speed generally is sufficient to constitute an act of negligence on her part in permitting him to use her car on this particular occasion. To make such an allegation sufficient to even state a cause of action in a case of this nature, general averments that the driver had previously driven recklessly alone cannot be sufficient, but at least the circumstances and places where such previous occurrences were alleged to have happened must be set out in detail. In other words, one may have knowledge of a driver having on previous occasions driven at an excessive speed, and of having previously experienced an accident, and still not be considered negligent, if he gratuitously permits such a driver to operate his car for the sole benefit and purposes of such driver.

█ This is likewise true as to general allegations of prior recklessness, prior accidents, and incompetence. The mere general allegation of the pleader's conclusions as to such former occurrences to the knowledge of the owner of such automobile is not sufficient to state a cause of action against the owner of the automobile, for an injury caused by the negligence of the driver himself.

██ In such cases the negligence of the operator of the automobile at the time of the injury complained of should not be confused with the question of the claimed negligence of the owner of the automobile in permitting it to be operated by the third person who was operating the car. Such a driver may cause injury while operating another's automobile through the driver's grossest negligence, but the owner of the car cannot be held liable for the negligent act of such driver except under the express provisions of a statute creating such liability on the part of such owner. Since there is no such law in this state, this defendant could be held legally liable, only for some independent specific negligent act of hers, alleged, and which could be proven, and which was actually the proximate cause of the accidental injury complained of. Unquestionably, many similar accidents have occurred when a borrowed automobile was being so operated. That a suit based upon the theory here advanced has never been brought in this state, while not being conclusive that there is no existing cause of action under such circumstances, it is, however, clearly indicative that it has been generally believed that a cause of action did not exist under such circumstances. Such is, therefore pertinent to the idea that there is no such cause of action existing against the owner of an automobile in Louisiana.

█ The general rule is stated in Corpus Juris, Motor Vehicles, § 843, p. 1088, as follows: "General Rule. In the absence of statutory provisions or personal negligence, as in permitting the operation of his car by an incompetent person, the owner of an automobile or vehicle can be held liable for the injury occasioned by the negligence or wrongful act of his child, in operating it only on the theory that the child is acting as his agent or servant."

If we substitute the word "nephew" for the word "child" in the above-quoted section, we have what we think should be and is the rule in this state. By statute in this state a person is responsible for the negligent acts and damages of his minor child, but not of his nephew.

The term "incompetent person" as used by the courts generally we take to mean incompetent from physical or mental ability and impairment such as is found in children of tender age and physical weakness, insane persons, blind or cripple persons, and persons whose mental or physical qualities are so impaired normally or by alcoholic or other intoxicants that they are incapable or incompetent of properly operating a motor vehicle. In other words, a person may be a most competent and skillful driver and on occasions drive rapidly or recklessly, or act without prudence under given or particular circumstances. An owner of, an automobile, except for statutory exceptions, is not responsible to third persons for the negligence of an otherwise competent person to whom he has permitted the use of his car exclusively, for the pleasure, use, and convenience of such driver. This is true, even though such driver has, to the owner's knowledge, on some previous occasion exceeded the speed limit or suffered an accident through his fault or negligence while driving an automobile.

In the New York case of De Smet v. Niles, 175 App. Div. 822, 161 N. Y. S. 566, it was held, where driver of an automobile is owner's niece, who, while residing in owner's household, is not operating owner's machine for any general or special purpose of the owner, but for her own purpose, the owner is not liable for her negligence.

In view of what we have previously said, we are of the opinion that such should be the rule adopted by this court in the present case, and that the judgment of the district court maintaining the exception of no cause

of action filed by the defendant should be affirmed.

 We might add that, even though defendant might be held to be guilty of some slight act of imprudence in permitting her nephew to drive her car under the circumstances as are shown by the properly alleged facts in plaintiff's petition, we think there are no properly alleged facts therein under which said acts of plaintiff could be held to be the proximate cause of the alleged accidental injury.

"Proximate cause" in law means an act of omission or commission, the direct, immediate, or dominant cause of which operates in an unbroken succession to bring about an event or an injury. It must be the direct efficient cause of injury as distinguished from the indirect remote cause.

 This rule or definition as applied to the facts alleged in this petition, we think, would not justify this court in reversing the judgment of the lower court herein. Plaintiff's nephew was not, under the allegations of this petition, shown to be incompetent to operate this automobile in the sense that he was mentally and physically deficient or that he was inexperienced. While it was true that he was alleged to have been incompetent, there was no specific allegation to the effect which showed his incompetency, and the word "incompetent" used in plaintiff's petition was a mere conclusion of the pleader. McLain was alleged to have operated this car on many occasions, and it is unquestionably true that many sixteen year old boys who are accustomed to operate automobiles are as competent operators as older persons. There is no allegation that it was unlawful for this sixteen year old nephew of defendant's to operate this automobile, except in the town of Minden, where it is not alleged that defendant, who lives some distance from Minden and in another community, even had any knowledge of the existence of traffic ordinances of the town of Minden. She, who lived elsewhere, and who was not operating the car in the town of Minden herself, could not be held to have had knowledge of the traffic rules in the town of Minden where the accident occurred.

 The act of McLain in driving this car as alleged in the town of Minden on the occasion of the accident, under the allegations of this petition, was the proximate cause of the accident, and not any act of defendant herein. The alleged act of defendant's negligence was entirely too remote to be held other than the indirect and inefficient cause, if at all connected with the alleged accident.

In order to hold otherwise, it would be necessary for us to establish a new and nonexisting cause of action against an owner of an automobile, or of other property, in this state. We not only doubt our right to do this, but seriously doubt the wisdom of the departure from the usual rule of law of this state applicable to the legality of owners of property in general for the negligent use thereof by other persons for uses foreign to that of the owner. If the Legislature should in the future see fit to except automobiles from this general rule, and place them in the same category as ferocious animals, dynamite, gun powder, and other generally accepted instrumentalities and agencies, the courts would, of course, be governed accordingly. The Legislatures of this and of most other states have not seen fit to so class automobiles by statutory enactment, and this and other courts will not, and have no desire to, create new causes of action under the laws.

For the reasons herein stated, the judgment appealed from is hereby affirmed.