BAILES, Judge.
Plaintiffs, husband and wife, seek to recover damages ex delicto for the wrongful death of their daughter, physical injuries to the wife and their two other children, and for certain special damages, all arising from an automobile accident. The automobile which Mrs. Normand was driving, and in which her three children were riding, collided with an automobile rented by the Hertz Corporation to A. G., Hatcher. Hatcher and young: Miss Colleen Normand, age 14, were killed, and Mrs. Normana and the other two children were seriously injured.
This action was brought against the Hertz Corporation (Hertz), Royal Indemnity Company (Royal), the public liability insurer of Hertz, and Southeastern Fire Insurance Company (Southeastern), which had issued a public liability insurance policy on a vehicle owned by Hatcher not involved in this accident. Certain third party actions were instituted by Royal and Southeastern against Earl Edward Hamilton, T. E. Mercer Transportation Company and Transport Insurance Company to which is *385 sue was joined by the third party defend-antsi It appears from the record before us that no dispositive judgment has been signed in the third party action and consequentially there is no appeal before us on the issues raised in such third party action,
In the principal action judgment was rendered in favor of plaintiffs against Southeastern for the total sum of $20,000, this being the maximum physical injury coverage and $900 for property damage. The demands against Hertz and Royal were denied and the action against these two defendants was dismissed. The plaintiffs appeal from the judgment insofar as it dismissed their action against Hertz and Royal, and Southeastern appeals devolu-tively from the judgment in favor of plaintiffs. We find that the trial court correctly dismissed this action of plaintiffs against Hertz and Royal; however, we find manifest error in the holding of the trial court awarding recovery against Southeastern. The judgment against Southeastern is reversed.
The circumstances surrounding the accident and the negligence therein are not questioned. The Normand vehicle was traveling west from Baton Rouge, Louisiana, on U. S. Highway 190, a divided four lane highway. Mrs. Normand was driving in the inside or left hand traffic lane, having just passed a large trailer truck. Traveling in the inside eastbound traffic lane was the Hertz vehicle which went out of control some 100 feet from the Normand car and crossed the center median of the highway. Mrs. Normand was unable to avoid the collision. The front of her car ran into the right hand side of the Hertz vehicle. The trial court found, and the record fully supports the conclusion, that the sole proximate cause of the accident was the negligence of the driver of the Hertz automobile. This finding will not be disturbed.
In addition, a contest of serious import was waged at the trial over the identity of the driver of the Hertz automobile. The trial judge found that one Elgie Hay, a friend of Hatcher, was driving the Hertz vehicle at the time of the collision. The conclusion was based on a clear preponderance of the evidence and we find no error in it.
This leads to the questions most strenuously urged in these appeals, that is, did either the Hertz public liability insurance policy issued by Royal or the family automobile policy issued by Southeastern on Hatcher’s 1963 Mercury provide coverage for this accident, and, if so, what was the character of the liability? Finding that Hay was driving the Hertz automobile in violation of the provisions of the rental agreement between Hertz and Hatcher, the trial court denied recovery under the Royal policy, but, reaching the conclusion that the Hertz automobile rented by Hatcher was a “temporary substitute automobile,” found coverage under the Southeastern policy. While the former determination is correct, the latter is manifestly erroneous.
In obtaining the Hertz automobile Hatch-er signed a printed rental agreement which contained certain terms and conditions. Among these was one which provided:
“Under no circumstances shall vehicle be used, operated or driven: * * * (E) by any person except (1) Customer; or (2) if a qualified licensed driver, and provided Customer’s permission be first obtained, (a) a member of Customer’s immediate family, (b) Customer’s employer, or (c) an employee of Customer in the course of such employee’s regular and usual employment by Customer. The foregoing restrictions are cumulative, and each of them apply to every use, operation or driving of vehicle.”
In addition, there was a provision which states that the rented automobile is covered by an automobile liability insurance policy. However, the agreement provides that the policy does not apply while the vehicle is being operated by any person other than those heretofore enumerated.
*386 This insurance policy, issued by Royal to Hertz, is a standard public liability insurance agreement by which Royal agrees to pay any sums which the insured becomes legally obligated to pay as damages for bodily injury arising from the ownership, maintenance or use of the insured automobile. The word “insured” is defined so as to include the named insured and any person while using the automobile, provided the actual use of the automobile is with the permission of the named insured. By endorsement (#7-1) this definition was extended to include “any person or persons who may be a party to an agency agreement with the Hertz Corporation for the express purpose of renting without chauffeurs automobiles owned by or leased to the Hertz Corporation.”
The question presented, of course, is whether, under these provisions, Hatcher was capable of transmitting Hertz’s permission to use the insured automobile to Hay thereby extending coverage of the omnibus clause to this accident. At the outset, we note that the conditions and terms contained in the lease agreement, though admittedly in rather small print on the back of the lease agreement, were binding on Hatcher and are controlling in the determination of this case. One who signs a written instrument is presumed to know its contents and to intend that which its terms and conditions manifest. We are unaware of any reason in this case for which these express provisions could be disregarded.
The test for determining liability coverage of a second permittee or a driver twice removed from the named insured under an omnibus clause such as the one before us is well settled. That test is whether the second permittee was using the insured automobile with the permission or consent, either express or implied, of the named insured, the only person capable of conferring the permission to effectuate the omnibus clause. If the permission by the named insured to the initial permittee was of a general and unrestricted nature then the initial permittee is capable of transmitting this permission to another or second permittee, that is, the general nature of the original permission implies consent of the named insured to drivers or users other than his immediate permittee. In the present case, however, by express and unequivocal prohibition, the initial permittee, Hatcher, was denied permission to allow others to use the automobile except in certain enumerated cases. Such restricted permission does not carry with it the implied consent of the named insured that any person might use the vehicle. Comeaux v. Miller, La.App., 195 So.2d 168; Smith v. Insurance Company of State of Pennsylvania, La.App., 161 So.2d 903; Anderson v. Adams, La.App., 148 So.2d 347. Under no interpretation of the permission contained in the lease agreement can we find consent by Hertz, the named insured, to the use of the automobile by anyone other than Hatcher, his family, employer or employee. Hay fell in none of these categories and was therefore driving the Hertz automobile without the permission of the named insured. The omnibus clause of the insurance policy was not activated in his favor. Nor was there any action on the part of Hertz or for its benefit or advantage from which consent could be implied. See e. g., Coco v. State Farm Mutual Automobile Ins. Co., La.App., 136 So.2d 288; Thomas v. Peerless Ins. Co., La.App., 121 So.2d 593.
Furthermore, we do not feel that the fact that Hatcher, the initial permit-tee, was “using” the insured automobile as a passenger at the time of the accident brings this case under the coverage of the omnibus clause. As we pointed out recently in the case of Smith v. Insurance Company of State of Pennsylvania, 161 So.2d 903, at 917:
“Although the protection of the omnibus clause extends to an insured who is “using” a vehicle although not actively engaged in operating it in the sense that he is utilizing it as a means of transpor *387 tation or a piece of mechanical equipment, such right of use, under our jurisprudence, is not without limitation or restriction. We believe our jurisprudence compels the conclusion that such “use” as distinguished from mechanical operation of an automobile is limited to the permittee’s own personal, individual use of the vehicle and cannot extend to such use thereof as is made by the per-mittee through the medium or agency of a third party notwithstanding express orders and instructions of the named insured to the contrary. To hold otherwise is to contravene established jurisprudence and violate the terms of the policy by permitting by indirection that which cannot be directly accomplished.”
This conclusion was reached after a review of the jurisprudence, Bolton v. North River Insurance Co., La.App., 102 So.2d 544; Garvey v. Great Atlantic & Pacific Tea Co., La.App., 125 So.2d 634; and, Donovan v. Standard Oil Co. of Louisiana, La.App., 197 So. 320, which had provoked the argument that the term “actual use” of the omnibus clause relates to the use of the vehicle and not to the identity of the driver, the conclusion being that so long as “use” as distinguished from actual operation is with permission of the named insured the insurer is liable for any accident. In refusing to adopt this interpretation of these cases we concluded:
“ * * * if the named insured prohibits and forbids permission to the original permittee to delegate permission to third parties, there is no coverage when a third party operates the vehicle, Longwell v. Massachusetts Bonding & Ins. Co., supra, (La.App., 63 So.2d 440), * * Smith v. Insurance Company of Pennsylvania, supra.
We feel that this is the case not only when the named insured absolutely forbids his immediate permittee to allow the use of the insured automobile by a third party but also when the permission of the named insured expressly prohibits the initial per-mittee from delegating the right to use the automobile except to specific persons. The permission does not become general and unrestricted simply because exceptions are made to a general prohibition against second permittees. Since Hay’s use of the insured automobile was without the permission of Hertz, the omnibus clause did not provide coverage of this accident.
We find no merit in the argument advanced by plaintiffs that the expansion of the definition of the word “insured” by Endorsement #7-1 when read in conjunction with other endorsements to the Royal policy constituted Hatcher a named insured, capable of extending coverage under the omnibus clause to Hay as an initial per-mittee. The endorsement is clear and unequivocal on its face. It was added to expressly include as an insured under the policy a lessee of a Hertz automobile. Any other interpretation of the endorsement could only result from a strained and unnatural reading of words clear and free from any ambiguity.
Plaintiffs also argue that Hatcher and Hay were engaged in a joint venture and as such Hay’s negligence was imputable to Hatcher, an insured under the Royal policy. Assuming arguendo that the requisites for a joint venture were met in this case, we still are unable to find coverage under the Royal policy. Coverage is dependent on permission of the named insured. We have found that Hay’s use of the Hertz automobile was without the permission prerequisite to activation of the omnibus coverage. Thus, there can be no coverage even if the status of joint ven-turers did exist. To hold otherwise would allow the indirect achievement of a result which could not be achieved directly in violation of the express terms of the policy and the jurisprudence of this State.
Finally, plaintiffs advance the contention that Hay, when driving the Hertz automobile, was an employee of Hatcher and was, therefore, within the *388 scope of the permission granted by the named insured to Hatcher. The case of Sherman v. O’Sullivan, La.App., 164 So. 343, is cited in support of this position. In the Sherman case, however, the insurance policy stated simply:
“This policy does not cover any liability of the renter or driver in respect to injuries * * * while being operated or manipulated by any person other than the renter who signed the rental agreement, or his employee.”
The court concluded that an employee was simply an agent and the third person who was driving the automobile at the time of the accident, even though driving without an agreement to be paid, was an agent or employee under the direction and control of the person who rented the vehicle. In the present case the word employee in the lease agreement is restricted by the words “ * * * in the course of such employee’s regular and usual employment by Customer.” Though possibly an employee of Hatcher under the decision in the Sherman case, Hay does not meet the other limitations imposed on the permission granted by the rental agreement in this case.
We conclude, therefore, that the trial court correctly denied the demands of plaintiffs against Royal and dismissed the suit.
The demands against Hertz were also correctly denied. These demands were based on the alleged negligence of Hertz in leasing an automobile without first conducting an investigation as to the lessee’s “ * * * habits or reputation for sobriety or his competency in operating, using and controlling an automobile, and in not observing that he had been drinking alcoholic beverages” and, secondly, in not initiating a search to locate the rented automobile when it was not returned at the end of the rental period, two days before the accident. Suffice it to say without a detailed recital of the evidence in the record that there is no proof that the rental to Hatcher was in any way out of the ordinary or surrounded by any circumstance which should have alerted Hertz to prospective danger. We do not feel that Hertz, in renting an automobile, is under any duty other than to use ordinary care to avoid the possibility of the operation of one of its automobiles by an incompetent person. Absent proof of some circumstance which would alert a reasonable man to the possibility of danger, Hertz is not negligent in renting to a prospective customer who produces the credentials required by the rental agreement before us and who evidences no signs of physical or mental disability. Nor was there negligence in not attempting to recover the rented automobile when the rental period expired. There is testimony in the record that leases such as this one are allowed to extend over the rental period for several days before searches are initiated. We do not find this unreasonable even if this procedure could be proved to be causally connected with the accident.
There remains only the claim asserted against Southeastern, the insurer of Hatch-er’s personal automobile. The trial court granted plaintiffs recovery under this policy after reaching the conclusion that the Hertz vehicle was a “temporary substitute” for the automobile insured by the Southeastern policy.
That policy was a standard family automobile policy which extended coverage to a “temporary substitute automobile” when the insured automobile was “ * * * withdrawn from normal use because of breakdown, repair, servicing, loss or destruction.” In order to bring the use of a non-owned within the scope of this extended coverage it must be shown that the insured vehicle was withdrawn from normal service for one of the several reasons enumerated and that except for this withdrawal the insured automobile would have been in use at the time in question. See, Fullilove v. United States Casualty Company of New York, 240 La. 859, 125 So.2d 389; Little v. Safe *389 guard Insurance Co., La.App., 137 So.2d 415. The plaintiffs have failed to carry this burden of proof.
The only attempt made to establish the necessary facts was in the testimony given by Hatcher’s wife. The import of her testimony was to the effect that though the hood had been blown off the insured auto, a 1963 Mercury, the automobile was in perfect running condition. Shortly before Hatcher rented the Hertz automobile she had driven the Mercury to the home of a friend and left it there to prevent Hatcher from driving it because of his frequent intoxication. But he had keys to the automobile and could have gotten it at any time he desired. Under these circumstances, even assuming that the insured automobile was withdrawn, which is doubtful, the withdrawal was not a result of breakdown, for repairs or for any other permissible reason under the policy. The Hertz automobile which Hatcher rented could not then be classified as a temporary substitute within the meaning of the coverage provided by Southeastern. In holding that the rented vehicle was a temporary substitute, the court a quo was manifestly in error and must be reversed.
For the foregoing reasons the judgment of the trial court denying the demands of plaintiffs against Hertz Corporation and Royal Indemnity Company dismissing the suit is affirmed.
The judgment in favor of plaintiffs and against Southeastern Fire Insurance Company is reversed and set aside. It is ordered, adjudged and decreed that there be judgment herein in favor of Southeastern Fire Insurance Company, denying the demands of plaintiffs and dismissing the suit against it.
Plaintiffs-appellants are cast for all court costs.
Affirmed in part; reversed in part; and rendered.