526 So.2d 484 (1988)
Elmore J. McCARROLL
v.
Kevin Ray KINCHEN and U-Haul[1].
No. 87 CA 0580.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
Rehearing Denied June 24, 1988.
*485 James Wattigny, Hammond, for plaintiff-appellee.
Gregory Moroux, Lafayette, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
These proceedings are the result of a collision on August 5, 1984, between a truck owned by U-Haul of Southern Louisiana, Inc. (U-Haul), which was leased to and driven by Kevin Kinchen (Kinchen), and an automobile owned and operated by Michael Faust (Faust). Elmore McCarroll (McCarroll) was a passenger in the Faust automobile. McCarroll filed suit for his damages against Amerco, U-Haul Company, their corporate subsidiary U-Haul of Southern Louisiana, Inc. (U-Haul), and Kinchen. Faust sued these defendants for his damages, and his wife Diane joined in the suit asserting a claim for loss of consortium.[2]
A jury found that:
(1) Kinchen was "legally responsible" for his accident;
(2) U-Haul was negligent in renting the vehicle contrary to an unspecified state statute, and this negligence was a cause of the accident;
(3) Kinchen had consumed alcoholic beverages prior to renting the truck and that U-Haul was negligent in renting it to him, which negligence was a cause of the accident; and
(4) U-Haul was at fault in failing to determine whether Kinchen could safely operate the type truck it permitted him to rent, which fault was a proximate cause of the accident.[3]
Kinchen and U-Haul have appealed, assigning error as follows:
*486 I. The trial court committed reversible error by allowing evidence, argument, and instruction to the jury under LSA-R.S. 32:417 and LSA-R.S. 32:404, contrary to law and that the court committed reversible error by refusing to enter a directed verdict in favor of defendants on the issue.
II. If U-Haul can be held to the prohibition of LSA-R.S. 32:417 and LSA-R.S. 32:404, and U-Haul violated the statutes, such a violation was not a cause in fact of the accident.
III. The trial court committed reversible error by allowing evidence of defendant's drinking, incompetence in operating a truck, or diminished capacity in that the instruction as applied to U-Haul is contrary to law. Furthermore, the court committed reversible error by denying a directed verdict in favor of U-Haul on these issues.
IV. The trial court committed reversible error by allowing the jury to view a video tape of the plaintiff attempting to walk and climb stairs.
At the close of plaintiffs' case, U-Haul moved for a directed verdict. It asserted that plaintiffs failed to show that Kinchen was intoxicated and failed to show that he behaved in a way that U-Haul should have been alerted to diminished ability to operate the truck. Additionally, it asserted that LSA-R.S. 32:404 (requiring nonresident holders of out-of-state licenses to obtain Louisiana operator's licenses within ninety days) should not be read in tandem with LSA-R.S. 32:417 (prohibiting the lease of a vehicle to an individual without a current license), since there was no causal connection shown between a violation of these statutes and the accident. The motion was denied.
Assuming that renting a vehicle to an individual holding an out-of-state license who is not in compliance with LSA-R.S. 32:404 is a violation of LSA-R.S. 32:417,[4] plaintiffs still had the burden of showing that the violation was a cause of the accident. Not every violation of a statutory duty amounts to negligence. Ketcher v. Illinois Central Gulf Railroad Company, 440 So.2d 805 (La.App. 1st Cir.1983), writs denied, 444 So.2d 1220 and 444 So.2d 1222 (1984). U-Haul was negligent only if its actions were a cause-in-fact of the accident and the duty imposed by LSA-R.S. 32:417 contemplated protection against the particular risk herein involved. Wright v. O'Neal, 427 So.2d 852 (La.1983); Snyder v. Bergeron, 501 So.2d 291 (La.App. 1st Cir. 1986), writ denied, 503 So.2d 483 (1987).
We are of the opinion that Kinchen's unexpired California driver's license had no connection with his collision with Faust's automobile. The legislature's concern in enacting LSA-R.S. 32:417 is apparent: a person without a driver's license or whose driver's license has expired may be or may have become inexperienced or unfamiliar with the operation of motor vehicles or otherwise be incompetent to drive. Kinchen testified that he held a Louisiana driver's license prior to moving to California. His California license had not expired. The risk resulting in the accident at bar is not within the ambit of the duty imposed by LSA-R.S. 32:417. The jury should not have been instructed with regard to this and the other Driver's License Act and Highway Regulatory Act statutes. As a result, it erroneously found U-Haul negligent and attributed a percentage of 20% fault to U-Haul as a result of the instructions and the inclusion of the issue of statutory violation to its special verdict.
The jury additionally assessed a percentage of 15% fault against U-Haul for its negligence in renting the truck to Kinchen because he had consumed alcoholic beverages. The jury was not asked whether it *487 found Kinchen to have been intoxicated at the time he rented the truck or at the time of the accident, whether it found his consumption of alcohol to be a cause of the accident, or whether U-Haul was or should have been aware of Kinchen's condition. The special verdict required only findings of whether Kinchen had consumed alcohol prior to renting the vehicle, whether U-Haul was negligent in renting the vehicle, and whether such negligence was a cause of the accident. The instructions given as to this issue were as follows:
A corporation owning a vehicle and renting it to a party which it could have determined was incompetent as a driver because he was drunk and failed to inquire of the driver whether he had complied with ordinances requiring the automobile drivers to have license[s] is negligent liable [sic] unto damages to third parties and injuries sustained as a result of being struck by the vehicle driven by the incompetent driver. The owner of an automobile who rents it to a drunken driver or to a driver approaching that condition is negligent and responsible in damages for injuries sustained by a third person due to the negligence of the driver upon the person ... upon the principle that one who entrust [sic] to incompetent hands a dangerous agency is responsible for the mischief due to the imcompetent [sic] operation of that machine. The lendor [sic] of a vehicle is personally responsible to third parties for injuries sustained as a result of the borrower's negligent operation of a vehicle if the evidence shows that the lender knew or should have known that the borrower was under the influence of alcohol at the time the vehicle was turned over to the borrower.
There is testimony in the record from which the jury could have found that Kinchen drank four ten-ounce beers between 11:00 and 2:00 on the afternoon of August 5, 1984. Robert Galladora testified that he and Kinchen had one beer on the morning of the accident and then purchased six ten-ounce beers at approximately 11:00 to 11:30 a.m., prior to driving to Baton Rouge from Kinchen's mother's home in Springfield. He testified that they split the six beers, which were consumed prior to their 1:00 to 1:30 p.m. arrival at U-Haul in Baton Rouge. U-Haul's rental contract with Kinchen was signed at 2:20 p.m. Kinchen testified that approximately 30 minutes elapsed between his arrival at U-Haul and his departure in the rented truck. He further testified that he drove the truck back to his mother's house, ate, showered, and was en route to Galladora's house with his headlights on when the accident occurred. The accident occurred early on the evening of August 5, 1984.[5]
It is unlikely that four ten-ounce beers five or more hours prior to the accident contributed to its occurrence. Plaintiff produced no evidence regarding time intervals between the ingestion of alcohol and its effective influence. Jessie Scivicque, a Springfield police officer who investigated the accident, testified that he noticed nothing in Kinchen's behavior characteristic of intoxication and allowed Kinchen to drive the vehicle from the scene. Galladora testified that he noticed none of the characteristics of intoxication when he left Kinchen at the U-Haul place of business in Baton Rouge.
In Baader v. Driverless Cars, Inc., 10 La.App. 310, 120 So. 515 (Orl.Cir.1929), the court determined that the owner of a vehicle who rents it to a drunken driver or to a driver approaching that condition is negligent and liable for the damages the lessee may cause. 120 So. at 517. The portion of the court's instructions quoted previously contains language verbatim from Baader. In Baader, the lessee's condition at the time he leased the automobile (which was 15 minutes prior to the accident) was such that the rental agency should have recognized that he was not a competent driver:
[The lessee] drove the automobile along Canal street, the busiest thoroughfare in the city, on a holiday, with reckless speed and abandon and indifference to the safety of other automobiles and of pedestrians. He collided with plaintiff at the *488 corner of Canal and Carondelet streets with great force, and continued on his heedless way until brought to a stop by the police. When arrested he was discovered to be in a maudlin state of intoxication, a condition very inadequately expressed by his modest admission, between sobs, that he had "a few beers." This statement, in view of the benign reputation which this beverage enjoys, amounts to slander.
120 So. at 516. The intoxication of the lessee in Baader caused the accident. The court, in explaining the liability of the rental agency, limited the responsibility of "one who intrusts to incompetent hands a dangerous agency" to injuries that result from the "incompetent operation of the machine." 120 So. at 517.
In Lyle v. Guillot, 143 So. 511 (La.App. 1st Cir.1932), this court recognized the duty not to allow an intoxicated person access to an automobile but found the owner of the automobile was not negligent because it was not shown that he was aware of the intoxicated condition.
In order to hold a vehicle owner responsible for the negligence of an intoxicated individual to whom he has leased or loaned the vehicle, he must know or should have known of the intoxication and the intoxication must have been a cause of the injury of which the plaintiff complains. See Baader v. Driverless Cars, Inc.; Lyle v. Guillot; Kemp v. Fourmy, 265 So.2d 651, 653 (La.App. 2d Cir.1972) (a suit involving allegations that the vehicle owner knew or should have known of inveterate recklessness, and the recklessness having been alleged to have caused the accident). The jury was not instructed to find whether Kinchen's intoxication was a cause of the accident.
Additionally, we address the jury's assessment of a percentage of 35% fault against U-Haul for failing to determine Kinchen's ability to operate the truck. With regard to this issue, the jury was instructed as follows:
To hold a lessor of a vehicle liable, the facts must demonstrate that there is evidence of (1) a contract and (2) the owner-lessor knew or should have known the incompetence of the driver. Absent these, the negligence of the lessee-borrower of a vehicle can not be imputed to the owner/lessor. The mere loan of a vehicle for the use by another does not render a loaner liable for the damages caused while his vehicle is being operated by the borrower with the owner's knowledge and consent if the owner has made reasonable investigation into the ability of the borrower to operate the vehicle carefully.
The special verdict reflects the following questions and answers in conjunction with the assessment of liability:
Was U-Haul at fault in failing to determine the ability of the driver/renter to safely operate a "truck" of the nature driven/rented by Mr. Kinchens [sic]?
[Yes]
If so, was this fault a proximate cause of the accident?
[Yes]
If so, please state the percentage.
[35%]
In Anderson v. Driverless Cars, Inc., 11 La.App. 515, 124 So. 312 (Orl.Cir.1929), an automobile was rented to an individual who had not obtained a driver's license as required by city (New Orleans) ordinance. Suit was brought against the unlicensed lessee-driver as well as the rental agency. The court noted the duty of an automobile lessor to make "reasonable investigation to determine whether the ... renter is an ordinarily competent operator." 124 So. at 313. The rental agency had not required the production of a license but had rented automobiles to the individual on previous occasions. The court determined that the lessor's duty to ensure the competence of its lessees may be fulfilled by either reasonable investigation into the competency or, in lieu of that, by accepting a driver's license as evidence of competency,[5] noting *489 that the lessee had held driver's licenses before and had been driving taxi cabs and delivery vehicles for a number of years. The court further concluded that the lessee's lack of a license was without a causal connection to the accident. 124 So. at 313.
Fault is the breach of a duty to protect against a particular harm, which harm, because of the breach, causes injury. See Nix v. Brasly, 489 So.2d 1038, 1041 (La. App. 1st Cir.1986). U-Haul has a duty to protect users of Louisiana highways from incompetent use of its vehicles. The scope of that duty requires it to use ordinary care to ensure that an incompetent person is not allowed to operate its vehicle. Normand v. Hertz, 211 So.2d 382, 388 (La.App. 1st Cir.1968), aff'd, 254 La. 1075, 229 So.2d 104 (1969). In Normand, this court dismissed a suit alleging negligence of a rental agency in failing to conduct an investigation into its lessee's "habits or reputation for sobriety or his competency in operating, using and controlling an automobile, and in not observing that he had been drinking alcoholic beverages." Id. The court noted that the particular rental was not out of the ordinary nor was there any circumstance which should have alerted the agency, and concluded:
We do not feel that Hertz, in renting an automobile, is under any duty other than to use ordinary care to avoid the possibility of the operation of one of its automobiles by an incompetent person. Absent proof of some circumstance which would alert a reasonable man to the possibility of danger, Hertz is not negligent in renting to a prospective customer who produces the credentials required by the rental agreement before us and who evidences no signs of physical or mental disability.

Id. (Emphasis ours.)
In Anderson v. Driverless Cars, Inc., likewise, the court determined that a prospective lessee's presentation of a valid license satisfies the lessor's duty of ordinary care in inquiring as to the individual's ability to operate a motor vehicle.
Here, U-Haul was presented with an unexpired out-of-state driver's license by a man who had called prior to his arrival to reserve a 24-foot truck. There were no circumstances shown that reflected any inability to operate the vehicle upon his arrival. If Louisiana is to require the testing of prospective vehicle lessees, we believe it within the province of the legislature to so decree and set the appropriate standards. U-Haul fulfilled its duty of ordinary care.
The jury's verdict was manifestly erroneous. Since its assessment of liability against U-Haul for renting the vehicle to Kinchen was based on prejudicially erroneous jury instructions and was clearly wrong, we have conducted a de novo review of the record. McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). This accident occurred because, by his own admission, Kinchen was driving too fast as he came to a bad curve on a narrow road. He dropped a lighted cigarette and was attempting to retrieve it when he approached the curve. He hit his brakes, and the truck slid straight across the road and into Faust's lane of traffic. He was driving too fast for the conditions, and he failed to maintain proper control of his vehicle. These acts of negligence were the sole proximate cause of this accident and the resulting damages.
Lastly, we address defendant's fourth and final specification of error: admission into evidence of a video tape of McCarroll endeavoring to walk, climb stairs, and lift an unabridged dictionary.
Defendants objected and have assigned error alleging that the video tape's unfair and prejudicial nature so outweighed its probative value as to render it irrelevant. We have viewed the video tape and have serious reservations as to its admissibility, particularly since it was made after a second, intervening, accident.
Although defendants failed to specify how their case was prejudiced, we note that we have reversed all liability as to U-Haul and that Kinchen's fault was admitted by him and clearly proven. The *490 error is therefore moot as to the former and harmless as to the latter.
The only other way the tape could have prejudiced the jury is in its award of damages. McCarroll was awarded $204,000.00. The jury was not asked to apportion damages with regard to medical costs, pain and suffering, and loss of past and future wages. There is ample evidence in the record, including the testimony of Dr. Robert Starns, who treated McCarroll immediately after the accident, and Dr. John Schumacher, a neurosurgeon who treated McCarroll for a number of months following the accident and finally performed surgery, regarding the severity of McCarroll's injuries and the resulting disability. Additionally, Dr. Jagjit Brar, an economist, testified as to McCarroll's decreased earning potential. He estimated past lost wages and future impaired earning capacity over McCarroll's remaining work life expectancy of 19.8 years. The more conservative estimates of each of these components totalled almost $200,000.00.
We believe the record amply supports the award to McCarroll and therefore pretermit a finding as to whether the admission of the video tape was error.
There was no error specified as to the amount of damages in general, so we need not review the damage awards to Faust and to his wife for loss of consortium.
For the reasons expressed hereinabove, the judgment casting U-Haul with 70% fault is reversed, and in all other respects, the judgment is affirmed. Costs are taxed to Kinchen.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] This suit was consolidated with a suit entitled," Michael G. Faust, et ux. v. Kevin Ray Kinchen, et al.," on November 7, 1986. All pleadings subsequent to the consolidation bore only the McCarroll caption. Pleadings in the Faust suit prior to consolidation were not furnished to this court. U-Haul of Southern Louisiana, Inc., was erroneously referred to in the McCarroll petition as "U-Haul."
[2] Plaintiffs also sued Dairyland Insurance Company, Faust's liability and uninsured motorist carrier, Robert Galladora, and Republic Western Insurance Company, U-Haul's alleged insurer. Dairyland was voluntarily dismissed by plaintiffs prior to trial. Galladora was dismissed upon oral motion to the court at the beginning of trial. The issue of Republic Western's insurance coverage was submitted to the trial court after trial and is not an issue on appeal.
[3] A special verdict pursuant to LSA-C.C.P. art. 1812 was submitted to the jury which reflects these findings and, additionally, reflects the attribution of percentages of fault as follows: 30% to Kinchen; 20% to U-Haul for renting the vehicle "in violation of state statute"; 15% to U-Haul because Kinchen had consumed alcohol beforehand; and 35% to U-Haul for failing to ensure that Kinchen could safely operate the truck.
[4] The jury's written findings do not specify which statute was violated, but of the four (LSA-R.S. 32:52; LSA-R.S. 32:402; LSA-R.S. 32:404; and LSA-R.S. 32:417) included in the court's instructions to the jury, only LSA-R.S. 32:417 imposes any manner of duty upon the lessor of a motor vehicle.
[5] The record is silent as to the exact time of the accident.
[5] It should be noted that a New Orleans city ordinance prohibited the leasing of a motor vehicle to an unlicensed driver. See Baader v. Driverless Cars, Inc., 10 La.App. 310, 120 So. 515, 517 (Orl.Cir.1928).