DWYER v. MARGONO

[128 N.C. App. 122 (1997)]

———

TIMOTHY J. DWYER, Administrator of the Estate of Wendy Michele Dwyer, Plaintiff v. JONATHAN MARGONO; P.T. USAHA SISTIM INFORMASI JAYA; IBM WORLD TRADE CORPORATION; INTERNATIONAL BUSINESS MACHINES CORPORATION; and TRIANGLE RENT-A-CAR, INC., Defendants

No. COA97-135

(Filed 16 December 1997)

**1. Automobiles and Other Vehicles § 440 (NCI4th)— rental car—negligent entrustment—summary judgment for rental company**

The trial court did not err in an action arising from an automobile accident by granting summary judgment for Triangle Rent-A-Car on the issue of negligent entrustment where plaintiff argues that Triangle failed to exercise reasonable care in renting an automobile to defendant Margono in that it issued the automobile upon his presentation of his International driver's license and did not question him about his driving experience and credentials. *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, requires the owner of an automobile to ensure that the person to whom they are entrusting the car is properly licensed; the owner is under a duty to inquire further if the person is unable to produce driving credentials. The evidence here was that Margono possessed both an Indonesian license and an International driver's license and there was no evidence that he had ever been convicted of any traffic violations, so that an inquiry would not have been sufficient to put Triangle on notice that Margono was either an incompetent or reckless driver.

DWYER v. MARGONO

[128 N.C. App. 122 (1997)]

**2. Automobiles and Other Vehicles § 440 (NCI4th)— rental auto—accident—standard of care of rental company**

There was no evidence in a negligence action arising from an automobile accident that defendant Triangle Rent-A-Car violated the standard of care in the rental car industry when it rented an automobile to defendant Margono where, assuming that Triangle had a duty to make an inquiry into Margono's driving background, there is nothing to indicate that an inquiry would have put Triangle on notice that Margono was an incompetent or reckless driver.

**3. Automobiles and Other Vehicles § 446 (NCI4th)— rental car accident—car rented after previous accident—duty of care—not breached**

Triangle Rent-A-Car did not breach its duty of reasonable care when it provided defendant-Margono with a second rental auto after a parking lot accident and Margono was involved in an accident fatal to plaintiff's decedent after driving extremely fast in hazardous conditions and crossing an interstate median. There was evidence which tended to show that Triangle had a written policy which stated that a customer's name would be entered as "DO NOT RENT" after one accident that was his or her fault, with limited exceptions only after investigation, but that the policy was never implemented. Even though it was stated by a police officer on the accident report that Margono was at fault in the parking lot accident, Triangle's employee determined from Margono's description that the other driver was at fault; Triangle was justified in making its own determination as to fault since this was a minor accident involving only property damage.

**4. Automobiles and Other Vehicles § 446 (NCI4th)— rental care accident—driver as agent of rental company—no evidence**

The trial court did not err by granting summary judgment for defendant Triangle Rent-A-Car on the agency issue where defendant Margono drove a Triangle car extremely fast in hazardous conditions, crossed the medium of an interstate, and was involved in a head-on collision in which plaintiff's decedent was killed. There was no evidence of an agency relationship between Triangle and Margono.

Appeal by plaintiff from orders entered 30 October and 20 November 1996 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. Heard in the Court of Appeals 21 October 1997.

*Robinson & Lawing, L.L.P., by Robert J. Lawing, Jane C. Jackson, and H. Brent Helms, for plaintiff-appellant.*

*Wallace, Creech & Sarda, L.L.P., by John R. Wallace and Sheri L. Roberson; and Teague, Campbell, Dennis & Gorham, L.L.P., by George H. Pender, for defendant-appellee Triangle Rent-A-Car.*

WALKER, Judge.

On 11 December 1994, an automobile driven by Joseph Bankston Harvard was struck head-on by a 1995 Nissan Altima driven by Jonathan Margono (Margono) and owned by Triangle Rent-A-Car (Triangle). Wendy Dwyer was a passenger in the Harvard automobile which was traveling west on Interstate 40, while Margono was traveling east. The weather conditions were extremely hazardous at the time due to heavy rain and gusty winds.

Minutes before the accident, First Sergeant Larry DeBose and First Sergeant William Ussery of the North Carolina Highway Patrol, who were both driving east on Interstate 40, were passed by Margono, who was traveling at an extremely high rate of speed, estimated to be in excess of 90 miles an hour. Sergeant DeBose radioed Trooper Don Helms, who was traveling west on Interstate 40, and requested that he stop the Margono vehicle. After clocking Margono's speed at 86 miles an hour, Trooper Helms crossed the median in an effort to stop Margono. Meanwhile, Sergeant Ussery, pulled into the left lane behind the Margono automobile and attempted to "pace" the Margono automobile. Margono, however, continued to pull away from Ussery even though Ussery's speed approached 90 miles an hour. Sergeant DeBose then observed the Margono automobile skid off the left side of the road. When Margono attempted to steer the automobile back onto the road, he lost control of the automobile, skidded across the median, careened off the guard rail and struck the Harvard automobile head-on, killing Wendy Dwyer. Margono was convicted of involuntary manslaughter in connection with the accident.

At the time of the accident, Margono, an Indonesian, was employed by P.T. Usaha Informasi Jaya, an Indonesian agent of IBM. Margono was in the United States to participate in a three-month pro-

DWYER v. MARGONO

[128 N.C. App. 122 (1997)]

gram sponsored by IBM. IBM made arrangements for Margono to travel to the United States and provided him with food, an apartment and a rental automobile for his transportation. IBM had a corporate account with Triangle, who rented automobiles to the qualified attendees of the IBM program.

In 1988, while living in Indonesia, Margono obtained a Class C Indonesian license, by passing both written and driving tests, allowing him to operate a motorcycle. Margono drove a "medium-sized" motorcycle back and forth to work everyday. In July 1994, Margono obtained a Class A Indonesian license, authorizing him to drive an automobile. Margono was required to attend driving school, which consisted of classroom instruction and nine hours of behind-the-wheel training before passing both written and driving tests for his Class A license. After attaining his Class A license, Margono did not operate an automobile prior to his arrival in this country. On 14 October 1994, Margono used his Indonesian license to obtain an international driver's license. This license translates a person's home country driver's license into several languages and is used to interpret a foreign driver's license.

Prior to Margono's arrival in the United States on 31 October 1994, he received a residency package from IBM, which contained a list of driving rules and regulations regarding automobile operation. After Margono arrived, he attended two orientation programs sponsored by IBM, both of which included instruction on driver safety including driving on the right side of the road, observing traffic signals and speed limits along with basic information regarding traffic conditions in the United States. Between 31 October 1994 and 15 November 1994, Margono shared a rental automobile with another IBM attendee, Eric Chang, from Taiwan. Chang showed Margono how to drive on the right side of the road and Margono drove Chang's rental automobile on a few occasions around Raleigh. During this time period, Margono and Chang took trips to Washington, D.C., Grandfather Mountain and Orlando, Florida. Margono drove the rental automobile for a two-hour period on the trip to Orlando.

On 15 November 1994, Margono went to Triangle and requested a rental automobile of his own. He provided all the necessary information, completed a rental agreement and was provided a Ford Tempo. Triangle made no inquiry into Margono's previous driving experience, his ability to operate a vehicle or his familiarity with driving a vehicle in the United States. Between 15 November and 9 December 1994,

Margono drove the rental automobile locally everyday, approximately 486 miles, without incident.

On 9 December 1994, Margono was involved in an accident in a Hardee's parking lot in Raleigh. Margono cut through the parking lot, attempted to pass an automobile that was in the process of parking and caused an accident. There was only minor property damage. Officer R.K. Johnson of the Raleigh Police Department investigated the incident, spoke to both drivers, found that Margono's improper passing caused the accident and completed an accident report. Margono requested that Ray Craig, the driver of the other automobile, call Triangle to disclose what had happened because Margono did not feel he could effectively explain the accident. Craig spoke with a Triangle employee about the accident and stated that Margono was found to be at fault. Triangle told Craig to have Margono return the automobile so that a replacement could be issued.

Margono drove the Ford Tempo to Triangle and spoke with employee Felice Johnson about the accident. Ms. Johnson looked at the vehicle, completed an accident report and asked Margono to write down what had happened. Based on Margono's description of the accident and the small amount of damage to the automobile, Ms. Johnson concluded that the accident was caused by the other driver and classified it as a "fender-bender." Ms. Johnson then exchanged the Ford Tempo for a 1995 Nissan Altima. Two days later, Margono was involved in the fatal accident on I-40.

On 6 June 1995, Timothy J. Dwyer (plaintiff), Administrator of the Estate of Wendy Michele Dwyer, filed an action against Margono, P.T. Usaha Sistim Informasi Jaya (P.T.), IBM World Trade Corporation, International Business Machines Corporation and Triangle, seeking damages for the wrongful death of his daughter, Wendy Dwyer (IBM World Trade Corporation and International Business Machines Corporation will be collectively referred to as "IBM"). After denial of motions to dismiss by IBM and Triangle, the parties reached a settlement with all defendants except Triangle.

Plaintiff claimed Triangle was liable for its negligent entrustment of an automobile to Margono and was also vicariously liable, as the owner of the rental automobile, for the conduct of Margono. Triangle moved for summary judgment on both claims and the trial court granted summary judgment in favor of Triangle on the negligent entrustment claim on 30 October 1996 and on the agency claim on 20 November 1996.

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *see also Bogle v. Power Co.*, 27 N.C. App. 318, 219 S.E.2d 308 (1975), *disc. review denied*, 289 N.C. 296, 222 S.E.2d 695 (1976). The moving party has the burden of proving entitlement to summary judgment and the court, in ruling on the motion, must view the evidence in the light most favorable to the non-movant, with all inferences being drawn in the non-movant's favor. *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 344, 469 S.E.2d 583, 585 (1996) (*citing Varner v. Bryan*, 113 N.C. App. 697, 440 S.E.2d 295 (1994) *and Averitt v. Rozier*, 119 N.C. App. 216, 458 S.E.2d 26 (1995)).

**[1]** Plaintiff first argues that the trial court committed reversible error in granting summary judgment in favor of Triangle on the issue of negligent entrustment.

Our Courts have determined that negligent entrustment has occurred when:

> the owner of an automobile 'entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver' who is 'likely to cause injury to others in its use.' As a result of his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence.

*Thompson*, 122 N.C. App. at 346, 469 S.E.2d at 587 (*quoting Swicegood v. Cooper*, 341 N.C. 178, 180, 459 S.E.2d 206, 207 (1995)).

In the instant case, the only element of negligent entrustment that is in dispute is whether Triangle knew, or in the exercise of reasonable care should have known, of Margono's incompetence and recklessness. Plaintiff argues that Triangle failed to exercise reasonable care in renting an automobile to Margono because it did not question Margono about his driving experience and credentials, but rather issued the automobile upon Margono's presentation of his International driver's license. Plaintiff contends that sufficient evidence was presented to require the submission of this issue to the jury.

Plaintiff relies in part on *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 469 S.E.2d 583 (1996) in support of its argument,

contending that *Thompson* mandates an inquiry into the driving credentials of the person to whom the owner is entrusting his car.

In *Thompson*, the defendant corporation agreed to pay defendant Ray $550.00 to paint its truck. Defendant corporation entrusted the truck to Ray without ensuring that he was properly licensed or inquiring as to his driving record. *Id.* at 342-43, 469 S.E.2d at 584-85. Ray subsequently drove the truck while intoxicated, crossed the center line, struck another vehicle and killed the driver. *Id.* at 341, 469 S.E.2d at 584. According to the evidence, if the defendant corporation had requested to see Ray's driver's license, he would not have been able to produce one as it had been revoked the prior year. Further, had the defendant corporation asked why Ray's license had been revoked, it would have learned that Ray had been convicted of numerous violations, including driving while impaired, driving on the wrong side of the road, reckless driving and unsafe movements. *Id.* at 342, 469 S.E.2d at 584. This Court held that summary judgment in favor of the defendant was improper because a genuine issue of fact existed as to whether the defendant knew or should have known that Ray was an incompetent or reckless driver. *Id.* at 347, 469 S.E.2d at 587.

We find the instant case to be distinguishable from *Thompson*. We construe *Thompson* to require the owner of an automobile to ensure the person to whom they are entrusting the car is properly licensed. If the person is unable to produce his driving credentials, the owner is then under a duty to inquire further. Here, the evidence showed that Margono possessed both an Indonesian license authorizing him to drive an automobile and an International driver's license. Further, there was no evidence that he had ever been convicted of any traffic violations. Thus, an inquiry into Margono's credentials would not have been sufficient to put Triangle on notice that Margono was either an "incompetent or reckless driver who is likely to cause injury to others. . . ."

[2] Plaintiff also contends that Triangle failed to exercise due care by violating the standard of care in the rental automobile industry when it rented the automobile to Margono.

Plaintiff presented evidence of the standard of care in the rental automobile industry through the expert testimony of Bill Wilson (Wilson), a former operations manager of a rental automobile business. Relying on his experience in the industry and his review of policy manuals of other rental automobile companies, Wilson testified that in 1994 the standard of care in the rental automobile industry for

qualifying international drivers was to require some reasonable inquiry into the potential customer's familiarity with driving in the United States and their competence to operate an automobile in this country. Here, Triangle admits no inquiry was made.

Assuming Triangle had a duty to make an inquiry into Margono's driving background before entrusting a rental automobile into his care, the following facts would have been revealed: Margono had a Class C Indonesian driver's license which authorized him to drive a motorcycle; he had driven a motorcycle for approximately six years; Margono had a Class A Indonesian driver's license authorizing him to drive an automobile; he obtained this license by passing both written and driving tests after completing driver's training school and nine hours of behind-the-wheel instruction; he received a residency package from IBM which contained sections regarding driving safety and operation of an automobile in the United States; he participated in two IBM orientation programs, both of which included lectures on driving safety; he rode with another IBM employee over a two-week period enabling him to observe driving conditions; and he drove the other employee's rental automobile on several occasions. Thus, even if Triangle had engaged in the inquiries that Wilson testified were the standard of care in the industry, there is nothing to indicate Triangle would have been put on notice that Margono was an "incompetent or reckless driver who is likely to cause injury to others. . . ." *Thompson*, 122 N.C. App. at 346, 469 S.E.2d at 587.

[3] Plaintiff further argues that Triangle breached its duty of reasonable care when it provided Margono with a second rental automobile after the accident in the Hardee's parking lot.

Plaintiff presented evidence which tended to show that Triangle had a written policy in place at the time of the exchange of vehicles which stated:

> If a customer has "ONE" accident that is their fault, Richard will enter their name into the computer as a "DO NOT RENT." Only Shelton or myself can make an exception to this rule and only after we investigate all the facts surrounding the accident.

However, Triangle's evidence tended to show this policy was never implemented.

Even though Officer Johnson stated in the accident report that Margono was at fault in the accident in the Hardee's parking lot, Ms. Johnson determined from Margono's description of the accident that

the other driver was at fault. Since this was a minor accident involving only property damage, Triangle was justified in making its own determination as to fault, even if the above-stated policy had been in effect.

We conclude that there was insufficient evidence to show that Triangle knew or should have known that Margono was an "incompetent or reckless driver who is likely to cause injury to others"—an essential element of a negligent entrustment claim. As such, the trial court did not err in granting summary judgment in favor of Triangle on this issue.

[4] Plaintiff next contends that the trial court erred in granting summary judgment to Triangle on the agency issue. As we find no evidence of an agency relationship between Triangle and Margono, we conclude this assignment of error to be without merit.

The order of the trial court is

Affirmed.

Judges WYNN and SMITH concur.