922 So.2d 559 (2005)
Valeria Bailey COWAN, Individually; Valeria Bailey Cowan as Administratrix of The Estate of Sharon Dortch; Valeria Bailey Cowan, as Administratrix of The Estate of Gabrielle Dortch
v.
Kevin T. JACK; U-Haul Company of North Carolina; U-Haul International, Inc., "Company A," "Company B," and "John Doe C;" Republic Western Insurance Company; DEF Insurance Company.
No. 2005-CA-0175.
Court of Appeal of Louisiana, Fourth Circuit.
December 21, 2005.
*560 Gary W. Fillingim, Peter F. Burns, Sr., Richard H. Barker, IV, Jack Harang, Burns, Cunningham, Mackey & Fillingim, P.C., Mobile, AL, for Plaintiff/Appellant.
C. York Craig, III, Forman Perry Watkins Krutz & Tardy LLP, Jackson, MS, and Amos H. Davis, Baton Rouge, Louisiana, for Defendants/Appellees, U-Haul Co. of North Carolina, U-Haul Co. of Tennessee and U-Haul International, Inc.
Michael R. Sistrunk, Lynda A. Tafaro, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, LA, for Defendant/Appellee, Republic Western Insurance Company.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.).
Judge PATRICIA RIVET MURRAY.
This is a wrongful death and survival action. The principal issue on this appeal is whether a rental company has a legal duty to investigate the driving history of a customer who presents a facially valid driver's license. Apparently finding no legal duty, the trial court granted summary judgment in favor of the rental company defendants. From that judgment, the plaintiff appeals. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The pertinent facts in this case are virtually undisputed. On December 22, 1999, Kevin Jack, a twenty-year old college student, personally appeared at the Ashley Road Rental Center in Charlotte, North Carolina, and reserved a fourteen-foot U-Haul truck (the "Truck"). On December 26, 1999, Mr. Jack returned to finalize the rental transaction and to pick up the Truck. On both dates, Mr. Jack informed the Ashley Road employee that he needed a one-way, four-day rental to move his belongings from his home in the Charlotte, North Carolina area to New Orleans, Louisiana, where he would return the Truck to a local U-Haul center.
On both dates, Mr. Jack presented his facially valid, unexpired New Jersey driver's license as part of the rental transaction. Mr. Jack's driver's license bore a July 2000 expiration date and had no markings indicating that his driving privileges were restricted in any way. In completing the rental documentation, the Ashley Road employee copied Mr. Jack's address as it appeared on the driver's license; the driver's license listed Mr. Jack's address as a New Jersey post office box. However, the employee obtained a home telephone number by questioning Mr. Jack, who provided the *561 employee with a local North Carolina number. According to Mr. Jack's deposition testimony, the only other question the employee asked him was whether he needed furniture pads to pack his belongings.
On December 26, 1999, as part of the rental transaction, Mr. Jack signed a document entitled "U-Haul Equipment Rental Contract Addendum" (the "Addendum"), which provided:
BY SIGNING BELOW, I ACKNOWLEDGE I HAVE RECEIVED, AGREE TO AND UNDERSTAND THE TERMS AND CONDITIONS IN THE RENTAL CONTRACT AND DOCUMENT HOLDER AND HAVE READ AND UNDERSTAND THE APPROPRIATE USER'S GUIDE.
Included in the User's Guide is the following term: "Customer and any driver must be at least 18 years of age and possess a valid driver's license." Although the Ashley Road employee obtained an electronic verification number for Mr. Jack's credit card that he used to pay for the rental, the employee took no steps to verify the validity of the driver's license that Mr. Jack presented. Because this was a one-way rental, Mr. Jack was instructed to return the Truck by December 30, 1999 to a U-Haul center in New Orleans.
On December 26, 1999, after picking up the Truck at about 9:15 a.m., Mr. Jack returned home and spent a substantial part of the day packing his belongings in the Truck. At about 9:00 p.m. that day, Mr. Jack, his then wife, Christine Jack, and their friend, Justin Baker, departed on the trip to New Orleans. They each drove a separate vehicle, and they followed each other in caravan style. The Truck, which Mr. Jack drove, was the lead vehicle. Other than stopping to get gas and to eat a meal at a Waffle House in the Montgomery, Alabama area, the trio drove all through the night without incident.
On December 27, 1999, at about 10:30 a.m., Mr. Jack lost control of the Truck while driving westbound on the I-10 near Bay St. Louis, Mississippi. Mr. Jack testified that it was a clear, dry day and that he did not have "any idea why [he] went off the road." After going off the road, the Truck, which Mr. Jack was driving, crashed into the rear of a Jeep Grand Cherokee that was parked on the shoulder of the I-10 due to engine problems. Upon impact, the Jeep burst into flames, and all three occupants of the Jeep died in the fire. The occupants of the Jeep were the Dortch family  the driver, Ira Dortch; his wife, Sharon Dortch; and Mr. and Mrs. Dortch's four-year old daughter, Gabrielle Dortch. At the accident scene, the Mississippi Highway Patrol cited Mr. Jack for driving with a suspended driver's license.
On December 21, 2000, Valeria Bailey Cowan, individually and as administratrix of the estates of her daughter, Sharon Dortch, and granddaughter, Gabrielle Dortch, filed this wrongful death and survival action. Ms. Cowan named the following three defendants: (i) U-Haul Company of North Carolina ("UHNC"), the sole owner of the Ashley Road Rental Center; (ii) U-Haul International, Inc. ("UHI");[1] and (iii) Republic Western Insurance Company ("RWIC").[2]
*562 Ms. Cowan's claims against UHNC and UHI (collectively the "U-Haul Defendants") are based primarily on a negligent entrustment theory.[3] She alleges that Mr. Jack was an incompetent driver and that the U-Haul Defendants were independently negligent in renting the Truck to him. Ms. Cowan alleges that Mr. Jack was an incompetent driver because: (1) his license had been suspended at least three times by the New Jersey Department of Motor Vehicles; (2) he did not possess a North Carolina driver's license as required by North Carolina law, N.C. Gen.Stat. § 20-7(a), and that he had been found to be driving in violation of that law;[4] (3) he had been found guilty of at least five moving vehicle violations in the short period from receiving his first driver's license, including violations for speeding and failing to yield to oncoming traffic; and (4) he had failed to appear for court appearances in New Jersey, North Carolina, and South Carolina to resolve outstanding traffic violations in those states.[5]
Ms. Cowan alleges the following basis for the negligent entrustment claims she asserts against the U-Haul Defendants:[6]

*563  Entrusting the Truck to Mr. Jack, who defendants knew or in the exercise of reasonable care should have known, was not competent to operate said vehicle.
 Failing to ensure that Mr. Jack was properly licensed to operate the Truck.
 Failing to conduct a proper inquiry into Mr. Jack's background to determine if he was competent and/or qualified to drive the Truck.
 Failing to conduct a proper inquiry to determine if Mr. Jack possessed a valid driver's license.
After answering the suit and unsuccessfully attempting to remove the suit to federal court, the U-Haul Defendants filed a motion for summary judgment. The trial court granted the U-Haul Defendants' motion without giving any written reasons. The trial court designated its decision as a partial final judgment under La. C.C.P. art. 1915.[7] This appeal followed.

DISCUSSION
"Favored in Louisiana, the summary judgment procedure `is designed to secure the just, speedy, and inexpensive determination of every action' and shall be construed to accomplish these ends." King v. Parish National Bank, XXXX-XXXX, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La.App. 4 Cir.1/10/01), 778 So.2d 668, 670. According to this standard, a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 2000-2456 at p. 3, 778 So.2d at 670.
The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. Allen v. Integrated Health Services, Inc., 32,196, p. 3 (La.App. 2 Cir.9/22/99), 743 So.2d 804, 806. A fact is "material" if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Schmidt, 2000-2456 at p. 3, 778 So.2d at 670 (citing Moyles v. Cruz, 96-0307 (La.App. 4 Cir.10/16/96), 682 So.2d 326). Simply stated, a "material" fact is "one that would matter on the trial on the merits." Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.
Since the movants, the U-Haul Defendants, will not bear the burden of proof at trial, it is not necessary that they negate all elements of Ms. Cowan's claims. Rather, they need only point out to the court the absence of factual support for one or more elements essential to Ms. Cowan's claims. Once the movants meet this initial burden, the burden shifts to Ms. Cowan to present factual support sufficient to establish her ability to satisfy the evidentiary *564 burden at trial. If Ms. Cowan then fails to satisfy this burden, there is no genuine issue of material fact, and the movers are entitled to summary judgment. King, XXXX-XXXX at p. 8, 885 So.2d at 545-46. The opponent to a properly supported motion for summary judgment may not rest on the mere allegations or denials of his or her pleadings, but must respond by affidavits or as otherwise provided by law setting forth specific facts showing that there exists a genuine issue of material fact for trial. Coates v. Anco Insulations, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir.3/21/01), 786 So.2d 749, 753.
As a preliminary matter, we must resolve the choice of law issue. The choice of law issue in this case is governed by La. C.C. art. 3543, which provides that "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." La. C.C. art. 3543. The conduct of the U-Haul Defendants at issue occurred in North Carolina where the rental contract was executed. However, the accident and fatal injuries occurred in Mississippi. For purposes of this appeal, the pertinent legal analysis under both North Carolina and Mississippi law is the same. Both states have adopted the standard set forth in the Restatement (Second) of Torts § 390 (1965), which permits a finding of negligent entrustment based on a showing that the entrustor should have known the entrustee was incompetent, i.e., a reasonable person standard. See also Joseph v. Dickerson, 99-1046, pp. 1-2 (La.1/19/00), 754 So.2d 912, 913 (citing Restatement (Second) of Torts § 390 (1965)). A true conflict thus does not exist. The parties, however, agree that the law of North Carolina applies, and we apply North Carolina jurisprudential and statutory law in deciding this appeal as the conduct at issue occurred there.[8]
To provide a background for analyzing the issue presented on this appeal, we first outline some general principles regarding negligent entrustment claims. The Restatement (Second) of Torts § 390 (1965) defines in general terms the elements of a negligent entrustment cause of action as follows:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
Similarly, the elements of a negligent entrustment cause of action in the specific context of a vehicle entrustment have been defined by North Carolina courts as follows:
"The owner of an automobile `entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver' who is `likely to cause injury to others in its use.' As a result of his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence."
Dwyer v. Margono, 128 N.C.App. 122, 127, 493 S.E.2d 763, 765 (1997)(citing Thompson *565 v. Three Guys Furniture Co., 122 N.C.App. 340, 346, 469 S.E.2d 583, 587 (1996))(citing Swicegood v. Cooper, 341 N.C. 178, 180, 459 S.E.2d 206, 207 (1995)).
"The common law concept of negligent entrustment focuses on the ability of the driver to operate the vehicle safely." Grimmett v. Burke, 21 Kan.App.2d 638, 906 P.2d 156, 165 (1995). Moreover, the common law has confined the contexts in which negligent entrustment claims are recognized; to-wit:
Liability on the part of the owner is generally confined to cases where he or she entrusts a motor vehicle to one whose appearance or conduct is such as to indicate his or her incompetence or inability to operate the vehicle with due care; to impose liability in other cases, where the incompetence of the driver is not apparent to the owner at the time of the entrustment, it must be affirmatively shown that the owner had at that time knowledge of such facts and circumstances relating to the driver's incompetence to operate the vehicle as would charge the owner with knowledge of such incompetence. Such knowledge may be established by the fact that the owner knew of specific instances of carelessness or recklessness on the part of the driver.
8 Am.Jur.2d Automobiles and Highway Traffic § 700.
Whether or not an entrustee possesses a driver's license is not dispositive of the entrustee's fitness to drive for purposes of a negligent entrustment claim. The lack of a driver's license does not equate to unfitness or incompetence; rather, "it just means that the person cannot lawfully drive." Suiter v. Epperson, 6 Neb.App. 83, 100, 571 N.W.2d 92, 104 (1997). The right to lawfully drive is regulated by state law.
On the other hand, the jurisprudence has recognized that "the possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary." Jimmie E. Tinsley, Lack of Care in Entrusting Chattel, 2 Am.Jur. Proof of Facts 652, § 6.4; see also Bartley v. Budget Rent-A-Car Corp., 919 S.W.2d 747, 752 (Tex.App.-Amarillo 1996)(noting the possession of driver's license to be "prima facie evidence" of driver's competency, which absent any evidence to the contrary conclusively negates the element that the rental company knew or should have known of the driver's incompetence).
Consistent with these principles, North Carolina courts have held that the owner of an automobile is required "to ensure the person to whom they are entrusting the car is properly licensed. If the person is unable to produce his driving credentials, the owner is then under a duty to inquire further." Dwyer, 128 N.C.App. at 128, 493 S.E.2d at 766. As the court in the companion federal case concluded "[t]he law in North Carolina is clear. There is no duty on the part of a rental company to conduct a background check on a prospective renter who presents the rental company with an unexpired driver's license." Dortch, 2005 WL 1279025 at 5.
Louisiana courts have likewise held that "a prospective lessee's presentation of a valid license satisfies the lessor's duty of ordinary care and inquiry as to the prospective lessee's ability to operate a motor vehicle." Payne v. Blankenship, 558 So.2d 1316, 1317 (La.App. 4th Cir.1990)(citing McCarroll v. Kinchen, 526 So.2d 484 (La. App. 1st Cir.1988), and Anderson v. Driverless Cars, Inc., 11 La.App. 515, 124 So. 312 (Orleans 1929)). In Payne, we also noted the duty of a lessor regarding screening a lessee is regulated by state statute. In North Carolina, the pertinent *566 statutory provision is the North Carolina Uniform Driver's License Act, which provides that "no person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so or in violation of any of the provisions of this article." N.C. Gen.Stat. § 20-34. This statute imposes a burden on a rental company to ensure that a prospective renter is licensed; however, this statute contains an actual knowledge standard.
With the above principles in mind, we address the issue presented on appeal of whether the trial court correctly granted summary judgment in favor of the U-Haull Defendants. As noted, in their capacity as the movants for summary judgment, the U-Haul Defendants are only required to disprove one element of Ms. Cowan's negligent entrustment claim to prevail. The sole element in dispute on appeal is whether the U-Haul Defendants knew or should have known in exercising reasonable care of Mr. Jack's incompetence.[9] Because it is undisputed that the U-Haul Defendants lacked actual knowledge, this element is narrowed to whether the U-Haul Defendants should have known of Mr. Jack's incompetence.
The proof the U-Haul Defendants offered in support of their summary judgment motion to disprove this element included Mr. Jack's responses to their requests for admissions in which Mr. Jack admitted that:
 He rented the Truck on December 26, 1999, and was required at that time to produce his driver's license and to sign the Addendum;
 He was not under the influence of alcohol or drugs at the time he rented the Truck;
 The driver's license he used to rent the Truck did not bear any markings indicating that his driving privileges were restricted in any way;
 He did not know that his driver's license was suspended;[10]
 He did not tell any U-Haul employee that his driver's license was suspended;
 He considered himself competent to operate a motor vehicle; and
 On December 26, 1999, he was not aware of any facts which should have caused the U-Haul Defendants to believe that he was not competent to drive or likely to cause injury to others by operating the Truck.
The U-Haul Defendants also introduced the affidavit of Keith Stuart, President of UHNC, who attested:
 UHNC has no record of Mr. Jack ever renting a U-Haul vehicle prior to December 26, 1999.

*567  Prior to renting a vehicle from UHNC and/or its rental centers, prospective rental customers are required to present a current driver's license and not appear intoxicated or otherwise physically or mentally incompetent to operate a motor vehicle.[11]
 UHNC's rental centers do not have the capability to perform real-time, electronic driving history checks on prospective customers. He is not aware of any industry, state or federal law, rule, or regulation requiring U-Haul rental centers in North Carolina to perform driving history checks on prospective rental customers prior to a vehicle rental. If such laws, rules, or regulations existed, he would know about it.
 Mr. Jack's Addendum indicates that he presented to the Ashley Road Rental Center his New Jersey driver's license having an expiration date of July 2000. By signing the Addendum, Mr. Jack represented to the Ashley Road Rental Center that he was at least 18 years of age and possessed a valid driver's license.
 He is aware that on December 27, 1999, Mr. Jack received a citation from the Mississippi Highway Patrol for driving with a suspended license. Prior to that date, UHNC had no knowledge of Mr. Jack's driving privileges being suspended and had no knowledge of facts or circumstances which would have caused UHNC and/or the Ashley Road Rental Center to question the validity of Mr. Jack's driver's license or his competency to operate a motor vehicle.
 No special training or extraordinary driving skill is required to operate rental vehicles of the type driven by Mr. Jack.
 Neither UHI nor UHTN exercise control over the day-to-day operations of UHNC or the Ashley Road Rental Center.
Once the U-Haul Defendants presented the above evidence establishing that Mr. Jack presented a facially valid, unexpired driver's license and that he did not appear physically or mentally impaired at the time of the rental, the burden shifted to Ms. Cowan, as the opponent of the summary judgment motion, to come forward with evidence establishing a genuine issue of material fact for trial. In granting the U-Haul Defendants' motion for summary judgment, the trial court apparently found Ms. Cowan failed to meet her burden.
We understand Ms. Cowan's argument on appeal to be that when the Ashley Road Center rented the Truck to Mr. Jack, it ignored several "red flags," which should have caused it to conduct an inquiry into Mr. Jack's driving credentials. As a result, she argues there is at least a fact question regarding whether the U-Haul Defendants exercised reasonable care in renting the Truck to Mr. Jack without conducting an investigation into his driving history. In this regard, Ms. Cowan enumerates several factors that she contends establish the existence of a material factual issue for a jury to decide; to-wit:
 Mr. Jack told the U-Haul employee that he was moving from his home in North Carolina to New Orleans, yet he presented a revoked New Jersey driver's license. Since Mr. Jack was a resident of North Carolina, North Carolina General Statute § 20-7(a) required that he obtain a North Carolina *568 driver's license.[12]
 U-Haul's written policy is not to rent vehicles to unlicensed drivers because they are, by U-Haul's definition and as a matter of law, incompetent drivers. U-Haul concedes that Mr. Jack was incompetent, as a matter of law, to drive the Truck because he was unlicensed.
 The U-Haul Defendants had two opportunities to inquire as to the validity of Mr. Jack's driver's license  once when Mr. Jack presented the license to make his reservation and then, again, when he picked up the Truck  and both times it failed to do so.
 Mr. Jack was only 20-years old and, by definition, an inexperienced driver who belonged to a high risk category of drivers, yet the U-Haul Defendants did not ask him if he had any experience driving a truck or knew anything about driving a heavy, loaded truck.[13]
 In December 1999, New Jersey and North Carolina were two of the thirty-seven states that made driver's license information available to rental companies electronically. UHNC, like its sister company and insurer RWIC, could also have used one of several third-party vendors to check the status of Mr. Jack's license within a matter of minutes.[14]

*569  While Mr. Jack's license was unexpired, U-Haul is the largest commercial vehicle rental company in the world, and, as such, knows that unlicensed drivers pose greater safety risks than licensed drivers and that many drivers whose licenses are revoked never surrender their licenses and continue to drive.[15]
Based on these facts, Ms. Cowan submits that a jury could conclude that the U-Haul Defendants did not meet the reasonable person standard because they should have investigated and determined that Mr. Jack was an incompetent driver. Significantly, the ground on which Ms. Cowan relies to establish Mr. Jack's incompetence is his lack of a legal right to drive; particularly, she argues that he was an unqualified driver""a driver for whom the mere act of driving, under North Carolina law, was negligence per se." She stresses the general rule that the question of reasonable care is for a jury to decide and thus generally is inappropriate for summary judgment. She contends the trial court erred in transforming the factual issue of whether the U-Haul Defendants should have known of Mr. Jack's incompetence into a legal issue and finding the U-Haul Defendants had no duty to exercise reasonable care in renting the Truck to Mr. Jack.
We conclude, as the U-Haul Defendants contend, that the trial court did not find the U-Haul Defendants had no duty to exercise reasonable care, but rather found that the U-Haul Defendants' duty to exercise reasonable care did not encompass the duty to investigate the driving record of a prospective customer who presents a facially valid driver's license and does not otherwise appear to be incompetent. Although, as Ms. Cowan contends, it generally is inappropriate to resolve negligent cases based on a legal finding of "no duty," an exception has been recognized when there is a categorical rule of no liability. As former Justice Lemmon explained:
The duty issue in the determination of liability in negligence cases is often confused with the scope of liability or scope of protection issue. The former usually questions the existence of a duty, while the latter (which assumes that a duty exists) usually questions whether the plaintiff's injury was one of the risks encompassed by the statute or rule of law which imposed the duty.
The following method has been suggested for distinguishing between the duty element and the scope of protection element in negligence cases:
As is often the case with tort puzzles, a view through the prism of trial court procedure points toward a solution. Careful speakers will reserve the formulation, "defendant has no duty," for situations controlled by a rule of law of enough breath and clarity to permit the trial judge in most cases raising the problem to dismiss the complaint or award summary judgment for defendant on the basis of the rule. On the other hand, if the case is of a sort such that typically the judge will need to know the details of the occurrence before ruling for defendant  i.e., if the case is of a type that must normally reach the directed verdict (or later) stage before defendant can expect to *570 prevail  then the appropriate formulation is in terms of [scope of protection].
D. Robertson, W. Powers, Jr. & D. Anderson, Cases and Materials on Torts 161 (1989). The authors therefore submit that the duty element normally comes into question when there is a categorical rule excluding liability as to whole categories of claimants or claims.
Fowler v. Roberts, 556 So.2d 1, 6 (La.1989); Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 596 (Lemmon, J., concurring). Thus, "[t]he specific risk issue [ did this defendant have a duty to protect this plaintiff from this risk that occurred in this manner ] is determined at the duty level only in those situations where there is a `categorical rule excluding liability as to whole categories of claimants or claims,' such as claims for failure to act." Frank L. Maraist and Thomas Galligan, Louisiana Tort Law § 3-2, 5-2 (1996). This case presents a categorical rule of no liability for failure to actfailure to investigate the driving history of a prospective customer who presents a facially valid driver's license.
We further conclude, as the U-Haul Defendants contend, that the analysis by the federal court in the companion Dortch case is persuasive. Although Ms. Cowan counters that the Dortch court erred in applying an actual knowledge standard as opposed to a should have known standard, which she stresses is the standard under the governing North Carolina common law, the Dortch court's reasoning belies that contention. Ms. Cowan's argument to the contrary is based on an erroneous attempt to blend the North Carolina statutory and common law standards, which are different.
The Dortch court correctly analyzed the plaintiffs' claims before it in terms of the both the North Carolina common law and statutory standard. In so doing, the Dortch court expressly found the U-Haul Defendants were not liable under either an actual knowledge or should have known standard. As the Dortch court found, the statutory provision imposes a scienteractual knowledge  requirement. The U-Haul Defendants undisputed lack of actual knowledge at the time of the rental transaction that Mr. Jack's license was suspended precludes liability for breach of the statutory duty. As the Dortch court stated, because a violation of N.C. Gen.Stat. § 20-34 requires the rental company have actual knowledge of the customer's suspended license and "[b]ecause the Plaintiffs have failed to provide any evidence of actual knowledge on the part of the U-Haul Defendants, they cannot maintain a claim based upon a violation of N.C. GEN. STAT. § 20-34." Dortch at 4, n. 1.
Turning to the common law negligent entrustment claim and focusing on whether the plaintiffs could prevail on a negligence entrustment theory based on a "should have known" standard, the Dortch court reasoned:
The Plaintiffs base this allegation upon their contention that U-Haul of North Carolina should have conducted a background check prior to renting the vehicle to Jack because they contend, such a check would have revealed that Jack had a suspended driver's license. The law in North Carolina, however, simply does not impose such a duty. If a customer presents a valid driver's license, the rental company is under no duty to inquire further. Dwyer v. Margono, 128 N.C.App. 122, 127, 493 S.E.2d 763, 765 (N.C.App.1997). If the customer fails to present a valid driver's license, then the rental company "is under a duty to inquire further." Dwyer, 493 S.E.2d at 766. Jack presented U-Haul of North *571 Carolina with an unexpired driver's license issued by the state of New Jersey. U-Haul had no duty to inquire further into Jack's driving credentials.
Id. at 4.
In sum, we conclude that given the categorical rule that a rental company when presented with a facially valid driver's license has no duty to investigate the prospective customer's driving history coupled with Ms. Cowan's failure to present any evidence establishing another basis on which to impose liability on the part of the U-Haul Defendants, we find the trial court did not err in granting summary judgment in favor of the U-Haul Defendants and RWIC in its capacity as their CGL insurer. Although one could reasonably argue it might be a better policy to require at least some inquiry of a prospective customer's driving credentials, it is not the law.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] George Olds, the assistant secretary of UHI, in his affidavit attested that "UHI is a service corporation providing, among other things, clearinghouse services to other U-Haul companies. UHI does not rent vehicles to the public and exercises no control over the day-to-day operations of U-Haul centers and/or dealers."
[2] RWIC was sued in two different capacities; to-wit: (i) as the commercial general liability insurer of the U-Haul Defendants, and (ii) as the liability insurer under a separate liability policy that extends coverage to renters or lessees of U-Haul rental centers, such as Mr. Jack. In the latter capacity, RWIC acknowledges that it remains a defendant in this suit. In the former capacity, however, it was dismissed by the partial summary judgment at issue on this appeal. RWIC is aligned with the U-Haul Defendants in seeking to have the trial court's decision affirmed.
[3] A separate action asserting virtually identical claims against the U-Haul Defendants, RWIC, and U-Haul of Tennessee ("UHTN"), the titled owner of the Truck, was filed by the heirs of Ira Dortch, the driver of the Jeep, and Gabrielle Dortch, the minor child. That separate suit was removed to federal court and transferred to the Southern District of Mississippi. In that case, the federal district court judge on May 11, 2005 (after the partial summary judgment was granted in this case) granted summary judgment in favor of the U-Haul Defendants and UHTN. Dortch v. Jack, 2005 WL 1279025 (U.S.D.C.S.D.Miss. 2005)("Dortch"). (As noted elsewhere, UHTN was joined by amended petition in this case, but was dismissed on UHTN's motion without prejudice. In the partial summary judgment at issue on appeal, UHTN was dismissed with prejudice from this case.)
[4] In his deposition, Mr. Jack testified that the only license he ever obtained was the New Jersey license that he obtained on his seventeenth birthday. Mr. Jack presented that facially valid New Jersey license to reserve and to rent the Truck. At the time of the rental transaction, Mr. Jack and his then wife, Christine Jack, had lived in North Carolina for eighteen months. Although Mr. Jack had obtained a North Carolina identification card, he had not (and due to his suspended New Jersey driver's license could not have) obtained a North Carolina driver's license. Thus, Mr. Jack was in violation of N.C. Gen. Stat. § 20-7(a), which provides that "[a] new resident of North Carolina who has a driver's license issued by another jurisdiction must obtain a license from the Division within 60 days of becoming a resident." Indeed, the record reflects that before the accident in question Mr. Jack was ticketed in North Carolina for violating this provision.
[5] Ms. Cowan also alleges that Mr. Jack was incompetent because of his age (20) and inexperienced in driving trucks.
[6] Ms. Cowan also asserts the following negligence claims against the U-Haul Defendants; to-wit:

 Failing to implement sufficient rules, regulations, and procedures to insure that vehicles are not rented or leased to persons in Mr. Jack's position who are unlicensed and/or incompetent operators.
 Failing to supervise and/or train employees to conduct a proper inquiry into a rental customer's driving background and history or make a proper determination of a renter's competency to operate their vehicle.
 Otherwise failing to implement rules, regulations, and procedures to insure that members of the public who use the roadways are not endangered as a result of defendants renting vehicles to unlicensed or otherwise incompetent operators.
Virtually verbatim allegations of negligence were made in the Dortch suit. We agree with the federal court's finding in Dortch that these negligence claims, like the negligence entrustment claims, are based on the U-Haul Defendants' alleged duty to conduct a background check into Mr. Jack's driving history. Our finding that the U-Haul Defendants had no such duty, as a matter of law, thus entitles the U-Haul Defendants to summary judgment on both the negligent entrustment and negligence claims.
[7] We find no error in that designation. We note, however, that to the extent the trial court's decision dismissed the U-Haul Defendants from the suit, it is a final judgment even without certification under La. C.C.P. art. 1915.
[8] We note the Dortch court in granting summary judgment found North Carolina law controlling.
[9] Although the parties in the trial court disputed the element of ownership, which they argued was a requirement of a negligent entrustment claim under North Carolina jurisprudence, that issue is not before us. In that regard, we note, as mentioned earlier, that the titled owner of the Truck is UHTN. Ms. Cowan joined UHTN by amended petition; however, the trial court granted UHTN's motion and dismissed it without prejudice. As part of the judgment appealed from, the trial court converted the dismissal of UHTN to a dismissal with prejudice. Although Ms. Cowan's notice of appeal listed the judgment dismissing UHTN, the dismissal of UHTN was not briefed and is thus not properly before us on appeal.
[10] In his deposition, Mr. Jack testified that although he knew his license was suspended in New Jersey, he believed he could drive in any other state. Regardless, we find it immaterial whether or not Mr. Jack knew his license was suspended. Rather, the material factual issue is whether the U-Haul Defendants knew or should have known Mr. Jack's license was suspended at the time of the rental transaction. It is undisputed that the U-Haul Defendants did not know.
[11] In discovery, the U-Haul Defendants acknowledged that this was the full extent of the company's rental policy at the time of the rental transaction in question.
[12] To the extent Ms. Cowan seeks to hold the U-Haul Defendants liable for failing to investigate Mr. Jack's lack of a North Carolina driver's license as required by § 20-7(a), we find this argument unpersuasive. This argument assumes that the U-Haul Defendants had a duty to inquire and to comply with that statute by determining the length of time a customer presenting an out-of-state license has been a resident of North Carolina. As the U-Haul Defendants point out, even assuming such a duty exists, its liability under N.C. Gen.Stat. § 20-34 for renting to an individual in violation of that statute requires actual knowledge. There is no evidence the U-Haul Defendants had actual knowledge that Mr. Jack had been a North Carolina resident for over sixty days at the time of the rental transaction. Absent such actual knowledge, there is no liability on the part of the U-Haul Defendants. See McCarroll v. Kinchen, 526 So.2d 484, 486, n. 4 (La.App. 1st Cir.1988)(rejecting argument that rental company is subject to statutory duty under a similar Louisiana statute requiring a holder of an out-of-state license to obtain a Louisiana license after ninety days of residency).
[13] Although Mr. Jack's deposition testimony indicates that the largest vehicle he had experience driving was a sports utility vehicle, we note that Mr. Stuart attested that "[n]o special training or extraordinary driving skill is required to operate rental vehicles of the type driven by Mr. Jack." We further note that Mr. Jack drove the Truck for over twelve hours and six hundred miles from North Carolina to Mississippi without incident. We thus find Ms. Cowan's reliance on this factor misplaced. Likewise, we find misplaced Ms. Cowan's reliance on Mr. Jack's age as a basis for establishing his incompetence. See Jimmie E. Tinsley, Lack of Care in Entrusting Chattel, 2 Am.Jur. Proof of Facts 652 (noting that the reluctance of courts to shortcut the knowledge requirement by imposing presumptions of incompetence, such as age, as a basis for imposing negligent entrustment liability on rental agencies); Wheat v. Kinslow, 316 F.Supp.2d 944, 953 (D.Kan.2003)(rejecting plaintiff's argument that would "endorse a per se characterization of 18 year-old drivers as reckless or incompetent").
[14] Although the plaintiffs in the companion Dortch case raised this issue, the federal court found it unpersuasive. A similar argument regarding a commercially available system to verify licenses was rejected in Nunez v. A & M Rentals, Inc., 63 Mass.App.Ct. 20, 822 N.E.2d 743 (2005)(holding that a rental company's duty to verify a valid license was limited to its statutory duty and refusing to impose an additional duty to verify a valid license through "a direct on-line computer connection with the Registry of Motor Vehicles.") Moreover, as the court in Nunez held, the expansion of the rental company's duty to verify the validity of a license is a legislative issue. Louisiana courts have likewise held that "[i]f Louisiana is to require testing of prospective vehicle lessees, we believe it within the province of the legislature to so decree and set the appropriate standards." McCarroll, 526 So.2d at 489; see also Suiter v. Epperson, 6 Neb.App. 83, 100, 571 N.W.2d 92, 104 (1997).
[15] As alluded to in the preceding footnote, the policing problem presented by drivers retaining possession of their unexpired, facially valid licenses after those licenses are suspended is a matter for the legislature, not the courts.